FILED
COURT OF APPEALS
DIVISION II

2013 APR 30 AM 8: 35

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CITY OF LONGVIEW, a Washington municipal corporation, <br>              Respondent/Cross Appellant, <br><br> v. <br><br> MIKE WALLIN, an individual, BANCAMS.COM, an unknown entity, WA CAMPAIGN FOR LIBERTY, a Washington non-profit corporation; VOTERSWANTMORECHOICES.COM, an unknown entity, COWLITZ COUNTY, a municipal corporation and KRISTINA Swanson, Cowlitz County Auditor, <br>            Appellants/Cross Respondents. | No. 43385-1-II <br><br> PUBLISHED OPINION |

VAN DEREN, J. — Mike Wallin sponsored an initiative proposing restrictions on the use of automated traffic safety cameras in the city of Longview. Before the Cowlitz County auditor determined that there were sufficient signatures to place the initiative on the ballot, Longview filed a declaratory judgment action asking the trial court to rule that the initiative was beyond the scope of local initiative power and requesting an order enjoining placement of the initiative on the ballot. In response, Wallin filed a special motion to strike Longview's declaratory judgment action under RCW 4.24.525, the Washington Act Limiting Strategic Lawsuits Against Public Participation ("SLAPP"). LAWS OF 2010, ch. 118, § 4 (included in the notes following RCW 4.24.525). The trial court denied Wallin's motion and granted Longview's declaratory judgment

request except for the portion of the initiative that mandated an advisory vote before the city council could adopt an ordinance authorizing the use of automated traffic safety cameras. Longview moved for reconsideration and, in response, Wallin filed another special motion to strike Longview's motion for reconsideration under RCW 4.24.525. The trial court denied Longview's motion for reconsideration and Wallin's special motion to strike.

Wallin argues that (1) Longview lacked a justiciable controversy when it filed for declaratory judgment and injunctive relief because it could not prove an injury in fact and because the matter was not ripe for review; (2) the trial court erred in concluding that the initiative was beyond the scope of local initiative power and, thus, the trial court abused its discretion in issuing an injunction prohibiting the initiative from being included on the ballot; (3) the trial court erred in denying both of his special motions to strike; and (4) Longview's preelection challenge to the initiative infringed on his constitutional rights to freedom of speech and to petition the government. Longview cross appeals, contending that the trial court erred in concluding that the advisory vote was within the scope of local initiative power and permitted it to be placed on the ballot.

While the appeal in this case was pending, our Supreme Court held in *Mukilteo Citizens for Simple Government v. City of Mukilteo*, 174 Wn.2d 41, 52, 272 P.3d 227 (2012) that initiatives concerning the use of automated traffic safety cameras are beyond the scope of local initiative power. Accordingly, we affirm the trial court's ruling that the initiative was beyond the scope of local initiative power but reverse its ruling that the advisory vote portion was within the scope of local initiative power. We also affirm the trial court's denial of Wallin's special motions to strike under RCW 4.24.525 and reject his justiciability claims and his argument that Longview violated his constitutional rights to freedom of speech and to petition the government.

No. 43385-1-II

FACTS

Longview is a noncharter code city that operates under Title 35A RCW. Longview Municipal Code (LMC) 1.12.010. RCW 35A.11.080 to .100 allows noncharter code cities to provide for the exercise of initiative and referendum in their cities, and Longview has authorized its citizens to exercise the powers of initiative and referendum in chapter 1.35 LMC.[1]

The Washington State Legislature has authorized local governments to enact ordinances providing for the use of automated traffic safety cameras. Former RCW 46.63.170 (2009).[2] On April 8, 2010, the Longview City Council enacted Ordinance No. 3130, which added a new chapter to the LMC, Chapter 11.04, authorizing the use of automated traffic safety cameras to detect stoplight infractions and school speed zone violations.[3] In doing so, the city council adopted the standards in former RCW 46.63.170 governing the use of automated traffic safety cameras. In August 2010, Longview contracted with American Traffic Solutions, Inc. (ATS) to install and monitor automated traffic safety cameras at several intersections in Longview.

___

[1] The powers of initiative and referendum in noncharter code cities are to be exercised as set forth in RCW 35.17.240-.360. RCW 35A.11.100.

[2] Former RCW 46.63.170(1) provided in part:
    The use of automated traffic safety cameras for issuance of notices of infraction is subject to the following requirements:
        (a) The appropriate local legislative authority must first enact an ordinance allowing for their use to detect one or more of the following: Stoplight, railroad crossing, or school speed zone violations. At a minimum, the local ordinance must contain the restrictions described in this section and provisions for public notice and signage.

[3] Ordinance No. 3130 authorized use of the automated traffic safety cameras for 18 months from the effective date of the ordinance, but the city council later enacted Ordinance No. 3148, extending the authorization period to May 1, 2012.

In January 2011, Mike Wallin and other petition sponsors notified Longview that they would begin collecting signatures for an initiative (Longview Initiative No. 1) that would (1) prohibit automated traffic safety cameras unless two-thirds of the city council and voters approved, (2) limit fines for traffic violations caught by the cameras, (3) repeal the city ordinance allowing the cameras, and (4) mandate an advisory vote for any ordinance authorizing the use of automated traffic safety cameras.[4] The number of valid signatures required to place the initiative on the ballot was 2,830, 15 percent of the registered voters in the city. RCW 35A.11.100. On

---

[4] The initiative provided:

Section 1. New Chapter 11.04. A new chapter 11.04 is hereby added to the [LMC] to read as follows:

11.04.210 Automatic Ticketing Cameras: The City of Longview and for-profit companies contracted by the City of Longview may not install or use automatic ticketing cameras to impose fines from camera surveillance unless such a system is approved by a two-thirds vote of the City Council and a majority vote of the people at an election.

1. For the purposes of this chapter, "automatic ticketing cameras" means a device that uses a vehicle sensor installed to work in conjunction with an intersection traffic control system, or a speed measuring device, and a camera synchronized to automatically record one or more sequenced photographs, microphotographs, or electronic images of the rear of a motor vehicle at the time the vehicle fails to stop when facing a steady red traffic control signal, or exceeds a speed limit as detected by a speed measuring device.

11.04.220 Fines: if two-thirds of the City Council and a majority of Longview voters at an election approve a system of automatic ticketing cameras to impose fines from camera surveillance, the fine for infractions committed shall be a monetary penalty of no more than the least expensive parking ticket imposed by law enforcement in the city limits of Longview.

Section 2. Chapter 11.04 (Ordinance #3157 allowing automatic ticketing cameras) is hereby repealed.

Section 3. Advisory Vote: Any ordinance that authorizes the use of automatic ticketing cameras enacted after January 1, 2007, must be put on the ballot as an advisory vote of the people at the next general election.

Section 4. Severability: If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

Clerk's Papers at 63.

May 23, the petition sponsors submitted petitions to the Longview City Clerk with 3,628 voter signatures.

On May 25, the city council concluded that the proposed initiative was invalid because it exceeded the scope of local initiative power under LMC 1.35.020(10), which provides:

> Ordinances, where the power of the city to legislate on the subject matter is derived from a grant of power by the state legislature to the city council or other corporate authorities as opposed to a grant of such power to the city as a corporate entity, shall not be subject to initiative or referendum.

Clerk's Papers (CP) at 67. Thus, because Longview's power to legislate on the subject was derived from a grant of power by the state legislature directly to the city council under former RCW 46.63.170(1), the city council adopted Resolution No. 1991, which stated that the ordinance was not the proper subject of an initiative and directed that no action be taken to include the initiative on the ballot.

The city clerk consequently did not transfer the petitions to the county auditor for signature verification within three days of their submission as required by RCW 35.21.005(4)[5]; thus, the petition sponsors filed a petition to compel the city clerk to submit the petitions to the county auditor for signature verification. The petitioners and Longview ultimately agreed to an order that required the city clerk to submit the signatures to the county auditor for verification. But on June 7, before the signatures had been verified, Longview filed for declaratory relief, stating that the initiative was beyond the scope of local initiative power and asking for an order enjoining the petitioners (and consequently, the auditor) from including the initiative on the ballot in August or November 2011.

---

[5] RCW 35.21.005(4) provides in part, "Within three working days after the filing of a petition, the officer with whom the petition is filed shall transmit the petition to the county auditor for petitions signed by registered voters."

Without filing an answer to the declaratory judgment action, Wallin filed a special motion to strike Longview's claims under RCW 4.24.525(4).[6] He argued that Longview's declaratory action dealt with conduct involving public participation and petition and that Longview failed to show that it would likely prevail in its action because (1) Longview lacked standing because it could not establish an injury in fact, (2) Longview's claim was not ripe because it filed its declaratory judgment and injunctive relief action while the petition sponsors were still gathering signatures, and (3) Longview's action for preelection review of the initiative violated his constitutional rights to free speech and to petition the government.[7] He also requested statutory costs and penalties.

On June 23, 2011, the county auditor determined that the initiative sponsors had gathered only 1,940 valid signatures and, thus, gave the petition sponsors 10 additional days to gather the

---

[6] RCW 4.24.525(4) provides in part:
　　　(a) A party may bring a special motion to strike any claim that is based on an action involving public participation and petition[.]
　　　(b) A moving party bringing a special motion to strike a claim under this subsection has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition. If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim. If the responding party meets this burden, the court shall deny the motion.

[7] Wallin also claimed that Longview's motion was premature under CR 56(a) and that Longview failed to name petition sponsor Josh Sutinen as an indispensable party, but those claims are not at issue on appeal.

sufficient number of valid signatures as required under RCW 35.17.280.[8] Longview moved to dismiss its declaratory judgment action without prejudice under CR 41(a)(1)(B)[9] and to shorten time so the motion to dismiss would be heard on the same date as the action for declaratory judgment and injunctive relief and the special motion to strike were scheduled to be heard.

At the July 11 motion hearing, the trial court denied Longview's motion to voluntarily dismiss because it characterized Wallin's special motion to strike as a counterclaim and, thus, the action could not be dismissed under CR 41(a)(3).[10] But the trial court also denied Wallin's special motion under RCW 4.24.525 to strike Longview's declaratory judgment action and his request for fees. It concluded that although Longview's claims for declaratory judgment and injunctive relief were based on actions involving public participation and petition under RCW 4.24.525, Longview met its burden to show that it would likely prevail on the merits because the legislature designated the subject matter of the initiative to the legislative authority of the city council and not to Longview generally. *See* LMC 1.35.020; *see also Mukilteo Citizens*, 174

---

[8] RCW 35.17.280 provides:

> Within ten days from the filing of a petition submitting a proposed ordinance the city clerk shall ascertain and append to the petition his or her certificate stating whether or not it is signed by a sufficient number of registered voters . . . If the signatures are found by the clerk to be insufficient the petition may be amended in that respect within ten days from the date of the certificate. Within ten days after submission of the amended petition the clerk shall make an examination thereof and append his or her certificate thereto in the same manner as before. If the second certificate shall also show the number of signatures to be insufficient, the petition shall be returned to the person filing it.

[9] CR 41(a)(1)(B) provides that "any action shall be dismissed by the court . . . [u]pon motion of the plaintiff at any time before plaintiff rests at the conclusion of his opening case."

[10] CR 41(a)(3) provides, "If a counterclaim has been pleaded by a defendant prior to the service upon him of plaintiff's motion for dismissal, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court."

Wn.2d at 51 ("'An initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself.'" (quoting *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006))). Wallin filed a motion for reconsideration of the trial court's denial of his special motion to strike.

The petition sponsors eventually gathered a sufficient number of valid signatures; thus, Longview renewed its request for a hearing on its action for declaratory judgment and injunctive relief by filing a reply brief in support of its action. After an August 15 hearing, the trial court concluded, "Under [former] RCW 46.63.170, the Washington State Legislature expressly delegated power to local legislative authorities to determine a city's use and operation of automated traffic safety cameras" and "[t]hat legislative grant of authority precludes local initiatives and referenda on the subject." CP at 344. The trial court concluded that, with the exception of the advisory vote, the initiative was invalid because it was beyond the scope of local initiative power. Accordingly, the trial court enjoined the petition sponsors from taking action to include the initiative on the August or November 2011 ballots. In the same order, the trial court denied Wallin's motion for reconsideration of the trial court's denial of his special motion to strike under RCW 4.24.525.

Longview moved for reconsideration of the trial court's ruling that the advisory vote portion of the initiative was within the scope of local initiative power. Wallin responded by filing a second special motion to strike Longview's motion for reconsideration and again requested statutory costs and penalties. The trial court denied both motions.

Wallin petitioned for direct review with the Washington State Supreme Court. The Supreme Court denied direct review and transferred the appeal to this court.

ANALYSIS

Wallin argues that (1) there was no justiciable controversy when Longview sued for a declaratory judgment and injunctive relief because Longview could not prove an injury in fact and because the matter was not ripe for review; (2) the trial court erred when it concluded that the initiative was beyond the scope of local initiative power and, thus, the trial court abused its discretion in issuing an injunction prohibiting the initiative from being included on the ballot; (3) the trial court erred in denying both of his special motions to strike; and (4) the preelection challenge to the initiative infringed on his constitutional rights to freedom of speech and to petition the government. Longview cross-appeals the trial court's conclusion that the advisory vote portion of the initiative was within the scope of local initiative power.

Because our Supreme Court's decision in *Mukilteo Citizens*, holding that legislation on the use of automated traffic safety cameras is beyond the scope of local initiative power, is dispositive, we affirm the trial court's conclusion that the initiative was beyond the scope of local initiative power and reverse the trial court's ruling that the advisory vote portion was within the scope of local initiative power. 174 Wn.2d at 52. We also affirm the trial court's denial of Wallin's two special motions to strike and reject his justiciability claims and his argument that Longview violated his rights to freedom of speech to petition the government.

I.   STANDARDS OF REVIEW

We apply customary principles of appellate review to an appeal of a declaratory judgment. *To-Ro Trade Shows v. Collins*, 144 Wn.2d 403, 410, 27 P.3d 1149 (2001). Because the facts here are undisputed and the parties seek review of the trial court's legal conclusion that all but the advisory vote portion of the initiative was beyond the scope of local initiative power, we review the trial court's award of declaratory relief on that matter de novo. *To-Ro Trade*

*Shows*, 144 Wn.2d at 410. We review a trial court's decision to grant an injunction and the terms of that injunction for abuse of discretion. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209, 995 P.2d 63 (2000).

The trial court's denial of Wallin's special motions to strike involved the application of RCW 4.24.525 to uncontested facts, a legal issue that we review de novo.[11] *State v. Hearn*, 131 Wn. App. 601, 609, 128 P.3d 139 (2006); *see also Am. Traffic Solutions, Inc. v. City of Bellingham*, 163 Wn. App. 427, 435, 260 P.3d 245 (2011) (trial court "erred as a matter of law" in granting special motion to strike under RCW 4.24.525), *review denied*, 173 Wn.2d 1029 (2012). And we review a trial court's decision granting or denying a motion for reconsideration for abuse of discretion. *Drake v. Smersh*, 122 Wn. App. 147, 151, 89 P.3d 726 (2004).

II.     JUSTICIABILITY AND STANDING

Wallin contends that a justiciable controversy under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, did not exist when Longview filed for declaratory judgment and injunctive relief. First, he argues that Longview's action was not ripe for review because the signature-gathering process was not complete when Longview filed its action. Second, he claims that Longview lacked standing because it could not establish that it would suffer an injury in fact by including the initiative on the ballot. We disagree.

As a preliminary matter, we note that "[a]s a general rule, courts refrain from reviewing the validity of a proposed law, including an initiative or referendum, before it has been enacted."

---

[11] No Washington court has explicitly stated the standard of review for the trial court's decision to grant or deny a special motion to strike under RCW 4.24.525. But because California has a similar statute, California cases are persuasive authorities for interpreting the Washington statute. *See Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1110 (W.D. Wash. 2010) (citing "California law as persuasive authority for interpreting" RCW 4.24.525). California courts review an order granting or denying a motion to strike under California's statute de novo. *Flatley v. Mauro*, 39 Cal.4th 299, 325, 139 P.3d 2 (2006).

*Am. Traffic Solutions*, 163 Wn. App. at 432. But "[i]t is well established . . . that a preelection challenge to the *scope* of the initiative power is both permissible and appropriate." *Am. Traffic Solutions*, 163 Wn. App. at 432; *see also Futurewise v. Reed*, 161 Wn.2d 407, 411, 166 P.3d 708 (2007) (court will consider preelection challenge "that the subject matter of the initiative is beyond the people's initiative power"); *Coppernoll v. Reed*, 155 Wn.2d 290, 299, 119 P.3d 318 (2005) (preelection review permissible "where the subject matter of the measure was not proper for direct legislation").

Notwithstanding that Longview's preelection challenge to whether the initiative was within the scope of local initiative power was proper, Wallin contends that Longview's preelection challenge to the legality of the initiative was not justiciable. "The justiciability of a claim is a question of law that we review de novo." *Am. Traffic Solutions*, 163 Wn. App. at 432.

The city sued Wallin under the UDJA. "'[B]efore the jurisdiction of a court may be invoked under the [UDJA], there must be a justiciable controversy.'" *To-Ro Trade Shows*, 144 Wn.2d at 411 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 814-15, 514 P.2d 137 (1973)). A justiciable controversy requires

> "(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*To-Ro Trade Shows*, 144 Wn.2d at 411 (quoting *Diversified Indus. Dev.*, 82 Wn.2d at 815). "Inherent in these four requirements are the traditional limiting doctrines of standing, mootness, and ripeness, as well as the federal case-or-controversy requirement." *To-Ro Trade Shows*, 144 Wn.2d at 411.

11

"Standing requirements tend to overlap the requirements for justiciability under the UDJA." *Am. Legion Post 149 v. Dep't of Health*, 164 Wn.2d 570, 593, 192 P.3d 306 (2008). We use a two-part test to determine whether standing exists under the UDJA. *Am. Legion Post 149*, 164 Wn.2d at 593. "First, a party must be within the 'zone of interests to be protected or regulated by the statute' in question. Second, the party must have suffered an 'injury in fact.'" *Am. Legion Post 149*, 164 Wn.2d at 593-94 (internal citations and quotation marks omitted) (quoting *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004)). "Where a controversy is of serious public importance the requirements for standing are applied more liberally." *City of Seattle v. State*, 103 Wn.2d 663, 668, 694 P.2d 641 (1985).

A. Ripeness

Wallin first argues that Longview's claims were not ripe for review because Longview filed its action before the county auditor determined that the initiative had enough signatures to be placed on the ballot. We disagree.

As a preliminary matter, Wallin does not specifically challenge justiciability on the four required grounds under the UDJA. Rather, in his ripeness claim, he suggests, without specifically arguing, that there was no actual dispute or "the mature seeds of one" at the time Longview filed its complaint because it did so before the county auditor determined that there were sufficient signatures for the petition to be placed on the ballot. *To-Ro Trade Shows*, 144 Wn.2d at 411. Accordingly, we address only the first justiciability requirement under the UDJA when addressing Wallin's ripeness claim.

Wallin contends that although the petition sponsors eventually submitted sufficient valid signatures to put the initiative on the ballot, Longview's action was not ripe for review because

12

ripeness is determined as of the date the complaint is filed, without regard to events occurring after that time. In support of his contention, he correctly notes that "'[j]urisdiction ordinarily depends on the facts as they exist when the complaint is filed.'" Br. of Appellant at 15, n.6 (emphasis omitted) (quoting *Newmann-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989)). But here, although there were insufficient valid signatures to support the petition when Longview filed its complaint, the petition sponsors had already submitted a petition to the county auditor with 3,628 signatures, well over the 2,830 required.

Moreover, Longview filed its complaint after adopting a resolution declaring the initiative invalid and directing that no action be taken to include the initiative on the ballot. In response, the petition sponsors filed an action to compel the city clerk to submit the petitions to the county auditor for signature verification. Thus, when Longview filed its complaint, there were at least the "'mature seeds'" of a dispute between Longview and the petition sponsors. *To-Ro Trade Shows*, 144 Wn.2d at 411 (quoting *Diversified Indus. Dev.*, 82 Wn.2d at 815); *see also First United Methodist Church v. Hearing Exam'r*, 129 Wn.2d 238, 244-45, 916 P.2d 374 (1996) (dispute between city and church regarding church's nomination for historic landmark ripe for review even though city had not yet enacted ordinance designating church as such).

Wallin nevertheless relies on this court's decision in *Save Our State Park v. Hordyk*, 71 Wn. App. 84, 856 P.2d 734 (1993), to support his claim that a court may not determine an initiative petition's validity until after signature validation. In *Hordyk*, petition sponsors submitted an unsigned initiative petition to the Clallam County Auditor for registration. 71 Wn. App. at 85-88. Under a county ordinance, the auditor was required to determine whether the petition was in the proper form before registering it. *Hordyk*, 71 Wn. App. at 86-87. The auditor rejected the petition on the ground that the petition's content violated a separate provision of the

13

county code. *Hordyk*, 71 Wn. App. at 88. The petition sponsors then successfully moved to compel the auditor to register the initiative petition and we affirmed, holding that the county code provision requiring the auditor to determine whether the petition was in proper form did not extend to a determination of the legality of the substance of the petition. *Hordyk*, 71 Wn. App. at 92.

We also stated:

> While we are sympathetic to the position that public funds should not be expended needlessly to place an initiative that violates the county code on the ballot, we have not been provided sufficient evidence that, at this early stage of registration, any more than a nominal amount of public moneys would be spent to prepare the petition for circulation. Although we have no doubt that greater amounts of public money would have to be expended when an initiative is put on the ballot, such amounts need be expended only if the petitioners successfully inspire their fellow citizens to support the proposed initiative by signing the petitions. *The time for determining whether an initiative might violate the code should not come any earlier than after signature validation.*

*Hordyk*, 71 Wn. App. at 92 (footnote omitted) (emphasis added). Wallin relies on this last sentence in his ripeness argument, contending that because the signatures here had not yet been validated at the time Longview filed its action, the declaratory judgment action was not ripe for review.

But *Hordyk* did not involve ripeness; rather, the issue was whether a county ordinance requiring the auditor to ensure that the petition was in the proper form authorized the auditor to determine the legality of the proposed initiative's substance. 71 Wn. App. at 91. Here, unlike in *Hordyk*, there was no question as to the petition's form and there were more than a sufficient number of signatures to place the initiative on the ballot. And although Wallin is correct that those signatures had yet to be verified, the petition sponsors ultimately gathered a sufficient

number of valid signatures to place the initiative on the ballot. Thus, because *Hordyk* is both legally and factually distinguishable from the present case, Wallin's reliance on it is misplaced.

Finally, Wallin argues that Washington courts "have looked at subject matter questions only *after* sufficient signatures have been g[ather]ed, consistent with traditional ripeness requirements." Br. of Appellant at 15 (emphasis added and boldface omitted) (citing *City of Port Angeles v. Our Water-Our Choice!*, 170 Wn.2d 1, 239 P.3d 589 (2010); *Wash. State Labor Council v. Reed*, 149 Wn.2d 48, 65 P.3d 1203 (2003); *Yelle v. Kramer*, 83 Wn.2d 464, 520 P.2d 927 (1974); *League of Women Voters of Wash. v. King County Records, Elections and Licensing Servs. Div.*, 133 Wn. App. 374, 135 P.3d 985 (2006); *Save Our State Park v. Bd. of Clallam County Comm'rs*, 74 Wn. App. 637, 875 P.2d 673 (1994)). But although Wallin is correct that in most of the cases he cites, the challenges to the initiatives came after sufficient signatures were gathered, the issue of ripeness was not before those courts, and the cases say nothing about proper timing of challenges to initiatives during the signature-gathering process. *See Reed*, 149 Wn.2d at 52-53; *Yelle*, 83 Wn.2d at 467; *League of Women Voters*, 133 Wn. App. at 377; *Save Our State Park*, 74 Wn. App. at 639-40. Moreover, in one of the cases, *Our Water-Our Choice!*, the Port Angeles city council filed an action for a declaratory judgment declaring an initiative invalid after the signature-gathering process was complete but before the auditor determined that there were sufficient signatures to submit the initiative to the ballot. 170 Wn.2d at 6-7. Accordingly, Wallin's ripeness claim fails.

B. Standing—Injury in Fact

Wallin next argues that Longview lacked standing because it failed to show that it would suffer an injury in fact by allowing its citizens to vote on the initiative. Longview responds that

15

it would be "financially burdened by having to place an initiative with unlawful subject matter on the ballot." Br. of Resp't at 44. We agree with Longview.

We have recognized that requiring a city to place an invalid initiative on the ballot would result in an undue financial burden on local government. *Hordyk*, 71 Wn. App. at 92. Although in *Hordyk* we held that the county auditor improperly rejected the initiative petition before the signature-gathering process had begun, we recognized that "public funds should not be expended needlessly to place an initiative that violates the county code on the ballot." *Hordyk*, 71 Wn. App. at 92. And a financial loss constitutes an injury in fact for the purposes of standing. *Seattle Sch. Dist. No. 1 v. State*, 90 Wn.2d 476, 493, 585 P.2d 71 (1978).

Here, the petition sponsors sought to require Longview to place the initiative on the ballot before determining whether the initiative was outside the scope of local initiative power, which could mean placing an initiative on the ballot that could never take effect, even if it received a sufficient number of votes to pass. If Wallin's claim were successful, Longview would have had to include the initiative on the ballot, tally the votes, and finalize the election process for an initiative that, even if approved by voters, would potentially never become effective. Thus, although Wallin is correct that Longview failed to specifically prove the cost of allowing the initiative on the ballot, there are clear financial and administrative costs associated with the election process. *See Hordyk*, 71 Wn. App. at 92. Including a potentially invalid initiative on the ballot when the matter could be resolved before such costs were expended would be an unnecessary waste of public resources.

We hold that the financial and administrative burden of placing a potentially unlawful initiative on the ballot was a sufficient injury in fact to confer standing on the city. Moreover, even if Longview did not have clear standing, we would address its claims because they "involve

16

significant and continuing matters of public importance that merit judicial resolution." *Am.*

*Traffic Solutions*, 163 Wn. App. at 433 (challenge to automated traffic safety cameras was matter

of sufficient public importance to confer standing).[12]

III.    SCOPE OF INITIATIVE POWER

Wallin further argues that the trial court erred when it concluded that the initiative was

beyond the scope of the local initiative power. Longview responds that our Supreme Court's

decision in *Mukilteo Citizens*, decided while this appeal was pending and in which our Supreme

---

[12] In *American Traffic Solutions*, the Bellingham City Council enacted an ordinance establishing
a system of automated traffic safety cameras and entered into a contract with ATS to install
them. 163 Wn. App. at 430. Initiative sponsors submitted an initiative petition to the county
auditor that would have prohibited the city from installing the cameras without approval by a
majority of the city council and voters. *Am. Traffic Solutions*, 163 Wn. App. at 430-31. ATS
challenged the initiative as exceeding the scope of local initiative power, and the initiative
sponsors filed a successful special motion to strike under RCW 4.24.525. *Am. Traffic Solutions*,
163 Wn. App. at 431.
    On appeal, the initiative sponsors challenged ATS's standing, and Division One of this
court held that because the initiative would require termination of ATS's contract with the city,
there was a "specific and perceptible harm" sufficient to confer standing. *Am. Traffic Solutions*,
163 Wn. App. at 433. The court also held that the initiative was outside the scope of local
initiative power because former RCW 46.63.170 (2011) conferred authority on the "local
legislative authority" to enact ordinances involving traffic safety cameras. *Am. Traffic Solutions*,
163 Wn. App. at 434. But Division One of this court affirmed the trial court's denial of an
injunction to ATS that would have prohibited the initiative from being placed on the ballot,
holding that if the initiative were held invalid and passed, it would have no legal force and, thus,
there would be no injury to ATS. *Am. Traffic Solutions*, 163 Wn. App. at 435.
    Wallin contends that this result is inconsistent because the court held that there was a
sufficient potential injury to confer standing, but that same injury was not sufficient to warrant
injunctive relief. Thus, he argues, we should disregard the court's holding that the injury
resulting from placing the initiative on the ballot was sufficient to confer standing. But
regardless of the alleged inconsistency, *American Traffic Solutions* involved injury to the
contractual interests of ATS, not to a city that would be required to place a potentially invalid
initiative on the ballot. 163 Wn. App. at 435. In fact, the *American Traffic Solutions* court noted
that although ATS might not have been injured by the initiative being placed on the ballot, "[t]he
cost of submitting the initiative for a vote might justify the issuance of an injunction." 163 Wn.
App. at 435, n.4.

17

Court held that a nearly identical initiative was not subject to the local initiative power, is dispositive. We agree with Longview.

"'An initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself.'" *Mukilteo Citizens*, 174 Wn.2d at 51 (quoting *Malkasian*, 157 Wn.2d at 261). "'[A] grant of power to [the] city's' legislative authority or legislative body 'means exclusively the mayor and city council and not the electorate.'" *Mukilteo Citizens*, 174 Wn.2d at 51 (alterations in original) (quoting *Malkasian*, 157 Wn.2d at 265). Thus, "[w]hen the legislature enacts a general law granting authority to the legislative body (or legislative authority) of a city, that legislative body's authority is not subject to 'repeal, amendment, or modification by the people through the initiative or referendum process.'" *Mukilteo Citizens*, 174 Wn.2d at 51 (quoting *Malkasian*, 157 Wn.2d at 265). "We look to the language of the relevant statute to determine the scope of the authority granted from the legislature to the local governing body." *Mukilteo Citizens*, 174 Wn.2d at 51.

In *Mukilteo Citizens*, our Supreme Court held, "In [former] RCW 46.63.170(1) [(2011)], the legislature granted to local legislative bodies the exclusive power to legislate on the subject of the use and operation of automated traffic safety cameras." 174 Wn.2d at 51. The Court reasoned that, because the statute delegated power to legislate to "'the local legislative authority' . . . [t]he legislature's grant of authority d[id] not extend to the electorate." *Mukilteo Citizens*, 174 Wn.2d at 52 (quoting former RCW 46.63.170(1) (2011)).

Our Supreme Court's ruling in *Mukilteo Citizens* is dispositive in the present case. In *Mukilteo Citizens*, the city of Mukilteo enacted an ordinance authorizing the use of automated traffic safety cameras and entered into a contract with ATS to supply them. 174 Wn.2d at 44. In

18

response, residents of the city of Mukilteo submitted an initiative to the city clerk for inclusion on the ballot that (1) forbade the city from installing the cameras unless approved by a two-thirds majority vote, (2) limited the amount of fines that could be imposed for infractions discovered by the cameras, (3) repealed the existing ordinance allowing the cameras, and (4) required that any new automated safety camera ordinance be placed on the ballot for an advisory vote. *Mukilteo Citizens*, 174 Wn.2d at 44-45.

Without first determining whether the proposed initiative was subject to the local initiative process, the Mukilteo city council directed the county auditor to place the initiative on the ballot. *Mukilteo Citizens*, 174 Wn.2d at 45. An association of Mukilteo residents filed a complaint against the city seeking a declaration that the initiative was beyond the scope of the local initiative power. *Mukilteo Citizens*, 174 Wn.2d at 45. When the trial court concluded that the action was premature, our Supreme Court accepted direct review and reversed, holding that the proposed initiative

> attempted to expressly restrict the authority of Mukilteo's legislative body to enact red light cameras by requiring a two-thirds vote of the electorate for approval and by limiting the amount of traffic fines. Because automated traffic safety cameras are not a proper subject for local initiative power, [the initiative] is invalid because it is beyond the initiative power.

*Mukilteo Citizens*, 174 Wn.2d at 52.

Here, Initiative No. 1 proposed to (1) prohibit automated traffic safety cameras unless two-thirds of the city council and voters approved, (2) limit fines for traffic violations discovered by the cameras, (3) repeal the city ordinance allowing the cameras, and (4) mandate an advisory vote for any ordinance authorizing the use of automated traffic safety cameras. Thus, not only did the initiative involve the "use and operation of automated traffic safety cameras," an improper subject of the initiative power under *Mukilteo Citizens*, but the initiative also involved

19

the same topics as did the initiative in *Mukilteo Citizens*. 174 Wn.2d at 51. Accordingly, *Mukilteo Citizens* controls here and, thus, the initiative Longview challenges here was also beyond the scope of local initiative power.

Wallin nevertheless contends that *Mukilteo Citizens* is not dispositive on whether the advisory vote portion of the initiative was within the scope of local initiative power because in *Mukilteo Citizens*, unlike here, the section of the initiative providing for an advisory vote was not severed and, thus, the court did not have an opportunity to address it. It is true that

> [w]here the literal words of a court opinion appear to control an issue, but where the court did not in fact address or consider the issue, the ruling is not dispositive and may be reexamined without violating stare decisis in the same court or without violating an intermediate appellate court's duty to accept the rulings of the Supreme Court.

*ETCO, Inc. v. Dep't of Labor and Indus.*, 66 Wn. App. 302, 307, 831 P.2d 1133 (1992). But here, even if we were to determine that our Supreme Court's ruling on an identical issue in *Mukilteo Citizens* was not controlling, we would nevertheless hold that the advisory vote portion is beyond the scope of local initiative power.

Our Supreme Court has determined that former RCW 46.63.170, governing the use of automated traffic safety cameras, provides exclusive authorization to the governing body of the cities that choose to use the cameras and, thus, an initiative on the topic of the operation of automated traffic safety cameras is beyond the scope of local initiative power. *Mukilteo Citizens*, 174 Wn.2d at 51-52. Here, the advisory vote portion of the initiative would have required Longview to hold an advisory vote at the next general election if it enacted any ordinance authorizing the use of automated traffic safety cameras. CP at 63. Thus, this portion would have affected the city council's statutorily granted ability to enact ordinances regarding the use and

operation of automated traffic safety cameras, and was, therefore, beyond the scope of local initiative power. *Mukilteo Citizens*, 174 Wn.2d at 51-52.

We hold that the trial court erred when it concluded that the advisory vote portion of the initiative was within the scope of local initiative power and we reverse the trial court's decision severing it from the remainder of the initiative. We affirm the trial court's conclusion that the remainder of the initiative was beyond the scope of local initiative power and, thus, the trial court did not abuse its discretion when it issued its order enjoining the initiative sponsors from including the stricken portions of the initiative on the ballot.

IV.  SPECIAL MOTIONS TO STRIKE UNDER RCW 4.24.525

Wallin next contends that the trial court should have awarded him statutory costs, attorney fees, and penalties in his two special motions to strike under RCW 4.24.525. We disagree.

Under RCW 4.24.525(4)(a), "[a] party may bring a special motion to strike any claim that is based on an action involving public participation and petition." The party bringing the motion

> has the initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition. If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim. If the responding party meets this burden, the court shall deny the motion.

RCW 4.24.525(4)(b). The statute provides for an award of costs, fees, and penalties up to $10,000 to a moving party who prevails in whole or in part. RCW 4.24.525(6).

Although the parties dispute whether the actions here involved public participation and petition, we hold that the trial court properly denied Wallin's request for statutory costs and penalties under the statute because Longview established by clear and convincing evidence the probability of prevailing on its claim. As we discussed above, the entirety of the initiative was

beyond the scope of the local initiative power because former RCW 46.63.170(1)(a) authorized the local legislative body, not the city itself or the general electorate, to enact ordinances regarding the use and operation of automated traffic safety cameras. *See Mukilteo Citizens*, 174 Wn.2d at 51-52. Although our Supreme Court decided *Mukilteo Citizens* after the trial court ruled on Longview's action for declaratory judgment and injunctive relief, when Longview filed its action, former RCW 46.63.170(1)(a) clearly stated that it was the local legislative authority, not the city generally, that had authority to enact ordinances regarding automated traffic safety cameras. Thus, when Wallin filed his motions, Longview presented clear and convincing evidence that it would prevail on its motion for a declaratory judgment seeking a determination that the initiative was outside the scope of the local initiative power.[13]

Wallin also contends that the trial court abused its discretion when it denied his motion for reconsideration of its denial of his special motion to strike because in the same order, the trial court concluded that the advisory vote portion was within the scope of the local initiative power. Thus, Wallin argues that he demonstrated that Longview was unlikely to prevail on the merits with respect to that portion and the trial court should have partially granted his special motion to strike. But although the trial court concluded that the advisory vote portion was within the scope of the local initiative power, because we hold that the trial court erred in reaching this

---

[13] Wallin also contends that his motion to strike should have been granted and that he was entitled to statutory costs and penalties because Longview's suit was unripe and because it lacked standing to bring the suit, thus, it was unlikely to prevail on the merits. But because we have already determined that Wallin's justiciability claims fail, we decline to address his argument here further.

conclusion, we hold that Longview should have prevailed on the merits and, thus, the trial court did not abuse its discretion when it denied Wallin's motion for reconsideration.[14]

Finally, Wallin argues that the trial court erred when it denied his second special motion to strike the city's motion for reconsideration of the trial court's conclusion that the advisory vote portion of the initiative was within the scope of the local initiative power. Br. of Appellant at 33. But because we hold that the advisory vote portion of the initiative was also outside the scope of the local initiative power and, thus, Longview should have prevailed on its claim as to that section, we again hold that the trial court did not err when it denied Wallin's second special motion to strike.[15]

## V.    FIRST AMENDMENT

Finally, Wallin argues that the city's preelection action seeking to declare the initiative beyond the scope of the initiative power infringed on his rights to petition the government and to

---

[14] Wallin also appears to argue that because he partially prevailed in Longview's underlying suit for declaratory judgment and injunctive relief with respect to the advisory vote portion of the initiative, he partially prevailed for purposes of RCW 4.24.525(6)(a). But the statute requires the court to award costs, attorney fees, and penalties to "a moving party who prevails, in part or in whole, *on a special motion to strike*." RCW 4.24.525(6)(a) (emphasis added). It does not authorize penalties under the statute for partially prevailing on the underlying suit.

[15] Longview makes three additional arguments regarding Wallin's motions. First, it argues that its claim is exempt from RCW 4.24.525 because Longview's suit was brought by the city attorney to prevent the public from having to fund an unnecessary election. *See* RCW 4.24.525(3) ("This section does not apply to any action brought by the attorney general, prosecuting attorney, or city attorney, acting as a public prosecutor, to enforce laws aimed at public protection.")). Second, it claims that RCW 4.24.525 violates article II, section 37 of the Washington Constitution because it amends the UDJA without reference. Third, Longview argues that the trial court erred when it denied its motion to voluntarily dismiss its suit after it discovered that there were insufficient signatures to include the initiative on the ballot. But because we hold that the trial court properly denied both of Wallin's motions because Longview showed the probability of prevailing on its claim, we need not address these arguments further.

free speech, as protected by the First Amendment to the United States Constitution and article I, sections 4 and 5 of the Washington Constitution. We again disagree.

Constitutional questions are issues of law that we review de novo. *City of Redmond v. Moore*, 151 Wn.2d 664, 668, 91 P.3d 875 (2004). Wallin relies on *Coppernoll* for the proposition that "substantive preelection review may . . . unduly infringe on free speech values." 155 Wn.2d at 298. In *Coppernoll*, our Supreme Court examined whether and under what circumstances preelection review of a statewide initiative violated article II, section 1(a) of the Washington Constitution, which provides the power of initiative to Washington citizens. 155 Wn.2d at 297-99. The *Coppernoll* court held that because "the right of initiative is nearly as old as our constitution itself, deeply ingrained in our state's history, and widely revered as a powerful check and balance on the other branches of government . . . this potent vestige of our progressive era past must be vigilantly protected by our courts." 155 Wn.2d at 296-97. Thus, the court held that substantive preelection review "is not allowed in this state because of the constitutional preeminence of the right of initiative." *Coppernoll*, 155 Wn.2d at 297.

But Wallin's reliance on *Coppernoll* is unpersuasive. The initiative power here does not derive from our state constitution; rather, it has been authorized by statute. *See Our Water-Our Choice!*, 170 Wn.2d at 8 ("While our constitution does not extend the initiative and referendum power to cities, our legislature has authorized, but has not required, noncharter code cities . . . to enact enabling legislation authorizing initiatives and referendums."). Thus, the "constitutional preeminence of the right of initiative" discussed in *Coppernoll* is not a concern in the present case, and the local powers of initiative do not receive the same vigilant protection as the constitutional powers addressed in *Coppernoll*. 155 Wn.2d at 296-97.

Moreover, our Supreme Court in *Coppernoll* recognized an exception to the general prohibition on preelection review of an initiative "where the subject matter of the measure was not proper for direct legislation. These challenges usually address the more limited powers of initiatives under city or county charters, or enabling legislation." 155 Wn.2d at 299. The court noted that an inquiry into whether the initiative exceeded the scope of initiative power was "separate and distinct from a challenge to the measure's substantive validity." *Coppernoll*, 155 Wn.2d at 299. The First Amendment concern articulated by the *Coppernoll* court specifically referred to a *substantive* preelection challenge to a statute, not a challenge to whether the statute exceeded the scope of initiative power. 155 Wn.2d at 298. Accordingly, Wallin's reliance on *Coppernoll* is misplaced, and we hold that his claims that the preelection challenge here violated his right to petition the government and right to free speech fail.

Wallin nevertheless contends that "the initiative process, as a whole, is protected political speech under the First Amendment," and "the initiative process is a limited-public forum for political speech." Thus, he argues, preelection denial of requests to put any automated traffic safety camera related initiative on the ballot is an impermissible content restriction on speech in a public forum.

Wallin is correct that the initiative process can involve protected political speech. The United States Supreme Court has held that "the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421-22, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988); *see also Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 192-205, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999) (holding that various restrictions on petition circulation infringed on First Amendment rights). But here, the petition sponsors were permitted to circulate

25

their petition for signatures and to submit that petition to the county auditor to have the signatures counted. It appears, then, that Wallin asserts a First Amendment right to have any initiative, regardless of whether it is outside the scope of the initiative power, placed on the ballot. But he has failed to articulate a basis in law for this right when the protected political speech, obtaining signatures for the petition, was not impaired here. Accordingly, Wallin's First Amendment claims fail.

VI.    ATTORNEY FEES

Wallin requests attorney fees on appeal under RAP 18.1(a) and RCW 4.24.525(6). RCW 4.24.525(6) requires an award of attorney fees "to a moving party who prevails, in part or in whole, on a special motion to strike." Because we affirm the trial court's denial of Wallin's special motion to strike, he is not the prevailing party and we deny his request for attorney fees.

We reverse the portion of the trial court's declaratory judgment order stating that the advisory vote portion of the initiative was within the scope of local initiative power. But we affirm the portion of the trial court's declaratory judgment order stating that the remainder of the initiative was beyond the scope of local initiative power, and we affirm the order enjoining that portion of the initiative from being placed on the ballot. We also affirm the trial court's denial of Wallin's two special motions to strike under RCW 4.24.525 and we affirm the trial court's denial of his motion for reconsideration.

VAN DEREN, J.

We concur:

PENOYAR, J.

WORSWICK, C.J.

26