[No. 84921-8.  En Banc.]
Argued May 24, 2011.       Decided March 8, 2012.

MUKILTEO CITIZENS FOR SIMPLE GOVERNMENT, *Appellant*, v. THE
CITY OF MUKILTEO ET AL., *Respondents*.

*Vanessa S. Power, Leonard J. Feldman,* and *Gloria S. Hong* (of *Stoel Rives LLP*), for appellant.

*Angela S. Belbeck* (of *Ogden Murphy Wallace*); and *Mark K. Roe, Prosecuting Attorney,* and *Gordon W. Sivley, Deputy,* for respondents.

*John B. Kerr Schochet* on behalf of The City of Seattle, amicus curiae.

¶1  MADSEN, C.J. — This case involves a preelection challenge to an initiative measure, Proposition 1, which repealed an ordinance governing the use of automated traffic safety cameras in the city of Mukilteo. The trial court

declined to grant an injunction, and Proposition 1 was placed on the November 2, 2010 Snohomish County general election ballot.

¶2 We hold that because the legislature expressly granted authority to the governing body of the city of Mukilteo to enact ordinances on the use of automated traffic safety cameras, the subject matter of Proposition 1 is not within the initiative power.

## FACTS

¶3 Mukilteo is a noncharter code city that operates under Title 35A RCW. The city has adopted the code city initiative and referendum power provided under RCW 35A.11.080-.100. MUKILTEO MUNICIPAL CODE (MMC) 1.14.010; see Clerk's Papers (CP) at 42. Under RCW 35A.11.100, the powers of initiative and referendum in noncharter code cities are to be exercised as set forth in RCW 35.17.240-.360.

¶4 In 2005, the Washington State Legislature authorized local governments to enact ordinances that allow the use of automated traffic safety cameras to issue notices of traffic infractions. Former RCW 46.63.170 (2005). On May 17, 2010, the city of Mukilteo enacted Ordinance 1246, authorizing and setting forth the guidelines for use of automated traffic safety cameras. On the same day, the city council authorized the mayor to enter into a contract with American Traffic Solutions to supply the city with automated traffic cameras.

¶5 In June 2010, a petition for Mukilteo Initiative 2 was commenced. Shortly thereafter, residents of the city of Mukilteo submitted Initiative 2 to the Mukilteo city clerk for inclusion on the ballot. Initiative 2 forbade the city of Mukilteo from installing an automated traffic safety camera system unless approved by two-thirds of the voters, limited the amount of fines that could be imposed for infractions arising from camera surveillance, and repealed the existing ordinance allowing automated traffic safety

cameras. Initiative 2 also provided that any new automated traffic safety ordinance had to be put on the ballot for an advisory vote. The petition's proposed ballot title was "Mukilteo Initiative 2."

¶6 On June 21, 2010, the Mukilteo City Council rescinded its authorization for the mayor to enter into a contract on behalf of the city with American Traffic Solutions. At a July 19, 2010 meeting, the Mukilteo City Council approved Resolution 2010-22, which directed the Mukilteo city clerk to provide the Snohomish County auditor with a certified copy of the resolution and asked the auditor to place Initiative 2 on the November 2, 2010 city ballot. The resolution included a recital that states "the City Council desires to hear from the qualified electorate on the issues addressed in the Initiative Petition, regardless of whether the subject matter is subject to the initiative process." CP at 84.

¶7 After the July 19, 2010 meeting, the Mukilteo Citizens for Simple Government (MCSG), an unincorporated association of Mukilteo residents, filed a complaint in Snohomish County Superior Court against the city of Mukilteo, the city clerk, Snohomish County, and the county auditor, seeking a declaration that an initiative was beyond the scope of the local initiative powers and an injunction preventing the inclusion of the measure on the ballot. The initiative's sponsors were permitted to intervene in the action.

¶8 The superior court ruled that the challenge to the initiative was premature and denied the motion for injunction. MCSG filed a notice of direct appeal of the court's ruling and an emergency motion for accelerated review. We declined accelerated review but granted the request for direct review.

¶9 In the meantime, Initiative 2 was placed on the November 2010 city of Mukilteo ballot as Proposition 1.[1]

---

[1] *Snohomish County Local Voters' Pamphlet, General Election* (Nov. 2, 2010).

The measure passed with a 70.71 percent favorable vote.[2] On April 25, 2011, the Mukilteo City Council adopted Ordinance 1275, repealing Ordinance 1246 (chapter 10.05 MMC).[3] The council enacted chapter 10.06 MMC, which revoked authorization for the use of automated traffic safety cameras in Mukilteo.

## ANALYSIS

¶10 As a threshold issue, we are asked to decide whether MCSG has standing to challenge the validity of this ballot measure. "An organization 'has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.' " *Am. Legion Post No. 149 v. Dep't of Health*, 164 Wn.2d 570, 595, 192 P.3d 306 (2008) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977)). MCSG's members have standing to sue in their own right as it consists of Mukilteo residents who are eligible to vote. The interest MCSG seeks to protect (use of red light cameras) is germane to a stated organizational purpose (public safety), and the relief requested (invalidation of Proposition 1) does not require the participation of individual members. Accordingly, we hold MCSG has standing to bring this challenge.

¶11 Several of the arguments raised in this case turn on whether Proposition 1 was an initiative or an advisory vote. MCSG contends that Proposition 1 was an invalid initiative, while the city of Mukilteo argues it was an advisory vote. An initiative is direct legislation by the people, while an advisory vote is a nonbinding poll of the

---

[2] SNOHOMISH COUNTY GENERAL ELECTION RESULTS, *available at* http://www.co.snohomish.wa.us/auditor/Elections/1110Finalsk/ecurrent-1110.htm.

[3] MUKILTEO ORDINANCE 1275.

citizen population. *See* RCW 35.17.260; RCW 29A.72.290. RCW 35.17.260 establishes rules governing initiatives that, when satisfied, require a city to either pass the proposed ordinance without alteration or submit the proposed ordinance to the registered voters. There are no statutory or constitutional provisions imposing a duty on a city council to call for an "advisory" vote.

■ ¶12 To discern the nature of Proposition 1 we begin with the language of the measure. The petition that was submitted to the Mukilteo City Council stated, "We, the undersigned voters of Mukilteo, require that, unless passed by the City Council, this ordinance Mukilteo Initiative No. 2—be submitted to a vote of the registered voters of the City of Mukilteo, subject to the requirements of *RCW 35.17.260.*" CP at 82 (emphasis added). RCW 35.17.260 is, as mentioned, the statute governing requirements for submission of a local initiative. Under this statute, a city council has only two options when an initiative petition is submitted to it: either enact the measure as an ordinance or submit it to the voters to determine whether to enact the measure. The statute provides no other course. By invoking the statute, the petitioners called for enactment of the measure as an initiative.

¶13 Initiative 2 would add a new chapter to the municipal code to be "ENACTED BY THE PEOPLE OF THE CITY OF MUKILTEO" ("[a] new chapter 10.06 is *hereby added to the Mukilteo Municipal Code*"). CP at 82 (emphasis added). Mukilteo Initiative 2 expressly sets out the language of a proposed new ordinance and unquestionably contemplates a vote of the people to enact it by initiative. The measure submitted to the council establishes procedural bars for the council to hurdle, should it wish to enact another ordinance allowing camera tickets, and provides for the repeal of Ordinance 1246.

¶14 Upon receipt of Initiative 2, the city council proceeded in accord with procedures for submitting an initiative to the voters. The city council passed Resolution 2010-22, which stated that the council had been presented with an "Initiative Petition requesting enactment of an ordinance to prohibit use of automated traffic safety cameras," and resolved, "Pursuant to RCW 35.17.260," the council requests the Snohomish county auditor "to place upon the general election ballot . . . a proposition for the purpose of submitting to the qualified electors . . . whether or not to enact an *initiative ordinance.*" CP at 84-85 (emphasis added). The city council explicitly stated that Proposition 1 was an initiative and directed the Snohomish County auditor to place the proposition on the ballot pursuant to RCW 35.17.260.

¶15 Proposition 1 included a ballot title and explanatory statement mirroring the language of Mukilteo Initiative 2. It required the Mukilteo City Council to repeal Ordinance 1246 and restricted the council's ability to act with respect to future ordinances governing automated traffic safety cameras. Proposition 1's ballot title states:

> Mukilteo Initiative No. 2 concerns automatic ticketing machines. This measure would prohibit Mukilteo from using camera surveillance to impose fines unless two-thirds of the Council and a majority of the voters approve, limit fines, repeal Ordinance 1246 allowing the machines, and mandate an advisory vote.
>
> Should this measure be enacted into law?

*Snohomish County Local Voters' Pamphlet, General Election* (Nov. 2, 2010).

¶16 As it appeared in the official *Snohomish County Local Voters' Pamphlet,* Proposition 1 also complied with the procedural requirements for initiatives. RCW 29A-

.72.050(2) provides a ballot title form that local initiatives are to follow:[4]

> For an initiative to the people, or for an initiative to the legislature for which the legislature has not proposed an alternative, the ballot title must be displayed on the ballot substantially as follows:
>
> Initiative Measure No. . . . concerns (statement of subject). This measure would (concise description). Should this measure be enacted into law?
>
> > Yes . . . . . . . . . . . . ☐
> >
> > No . . . . . . . . . . . . ☐

As required by the statute, Proposition 1's title contains (1) the initiative measure number—"Mukilteo Initiative No. 2"; (2) the word "concerns" is followed by a statement of the subject matter, i.e., "concerns automatic ticketing machines"; (3) the concise description of the measure is provided, i.e., "This measure would prohibit Mukilteo from using camera surveillance to impose fines unless two-thirds of the Council and a majority of the voters approve, limit fines, repeal Ordinance 1246 allowing the machines, and mandate an advisory vote"; and (4) it contains a proper "yes or no" question, i.e., "Should this measure be enacted into law?" Because Proposition 1's ballot title contained all of the elements spelled out in RCW 29A.72.050(2), it appears to have followed the procedural requirements for initiatives. *Compare Snohomish County Local Voters' Pamphlet, supra, with* RCW 29A.72.050(2).

¶17 The city, though, argues that Proposition 1 concerned only an advisory vote. This is unsupportable in context. On the same ballot as Proposition 1 appeared, the very next item submitted to the voters was Proposition 2, a clear

---

[4] Pursuant to RCW 29A.36.071(1), in a ballot title for a local measure, including referenda and any other question submitted to the voters, "[t]he ballot title must conform with the requirements and be displayed substantially as provided under RCW 29A.72.050."

example of an advisory vote.[5] Proposition 2 was titled "Advisory Vote on South Mukilteo Annexation." *Snohomish County Local Voters' Pamphlet, General Election Sample Ballot* (Nov. 2, 2010). Proposition 2 read as follows:

> The Mukilteo City Council is considering annexation of the area commonly referred to as the South Mukilteo Annexation Area. This annexation would add approximately 11,000 residents and approximately double the City's commercial acreage. What is your position on the proposed South Mukilteo Annexation?

*Id.* The proposition then asked the voters to indicate whether they supported, opposed, or had no opinion about annexation.

¶18 When compared with Proposition 2, a clearly marked advisory vote, the city's contention that Proposition 1 was an advisory vote is unsupportable.

¶19 The intervenors attempt to reframe the issue as one in which the city was simply soliciting input from the electorate. The intervenors rely on one phrase found in Resolution 2010-22 for this argument.

> [T]he City Council desires to hear from the qualified electorate on the issues addressed in the Initiative Petition, regardless of whether the subject matter is subject to the initiative process.

CP at 84; *see* Br. of Resp'ts/Intervenors-Defs. at 11. This language, which is ambiguous at best, is insufficient to overcome the clear intent of the proponents to bind the city council or the plain language of Proposition 1 asking voters to enact law. In the alternative, the intervenors claim that "[w]hile the face on the initiative does not assert that it is an advisory vote, if the voters approve the measure it could be simply treated as one." Br. of Resp'ts/Intervenors-Defs. at 12. This assertion is contrary to the statutes governing initiatives and advisory votes.

---

[5] Mukilteo Proposition 2 was the ballot measure directly following Proposition 1 on the sample ballot.

¶20 Finally, we reject the intervenors' contention that if the city chose not to consider Initiative 2 as advisory and instead treated it as enacting an ordinance, this would simply be an example of conditional legislation. As explained below, the initiative on its face would enact legislation that is beyond the scope of the initiative power, and calling it conditional legislation does not alter that fact.

¶21 We hold that Proposition 1 was historically, in substance, and procedurally an initiative.

¶22 Next, we consider whether the subject of safety camera tickets is beyond the scope of the initiative power. "An initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself." *City of Sequim v. Malkasian*, 157 Wn.2d 251, 261, 138 P.3d 943 (2006). "[A] grant of power to [the] city's" legislative authority or legislative body "means exclusively the mayor and city council and not the electorate." *Id.* at 265. When the legislature enacts a general law granting authority to the legislative body (or legislative authority) of a city, that legislative body's authority is not subject to "repeal, amendment, or modification by the people through the initiative or referendum process." *Id.*; *see also State ex rel. Guthrie v. City of Richland*, 80 Wn.2d 382, 384, 494 P.2d 990 (1972); *Leonard v. City of Bothell*, 87 Wn.2d 847, 852-53, 557 P.2d 1306 (1976). We look to the language of the relevant statute to determine the scope of the authority granted from the legislature to the local governing body. *See Malkasian*, 157 Wn.2d at 262-63; *Am. Traffic Solutions, Inc. v. City of Bellingham*, 163 Wn. App. 427, 260 P.3d 245 (2011).

¶23 In RCW 46.63.170(1), the legislature granted to local legislative bodies the exclusive power to legislate on the subject of the use and operation of automated traffic safety cameras: "The use of automated traffic safety cameras for issuance of notices of infraction is subject to the following requirements: (a) The appropriate local legislative authority must first enact an ordinance allowing for their

use." Also, automated traffic safety cameras may be used during the 2009-2011 fiscal biennium "if the local legislative authority first enacts an ordinance authorizing the use." RCW 46.63.170(1)(c). The legislature's grant of authority does not extend to the electorate.

¶24 Proposition 1 attempted to expressly restrict the authority of Mukilteo's legislative body to enact red light cameras by requiring a two-thirds vote of the electorate for approval and by limiting the amount of traffic fines. Because automated traffic safety cameras are not a proper subject for local initiative power, Proposition 1 is invalid because it is beyond the initiative power.[6]

## CONCLUSION

¶25 We hold that MCSG had standing to challenge Proposition 1. Additionally, we hold that Proposition 1 was historically, in substance, and procedurally an initiative. Finally, we hold that Proposition 1 exceeds the scope of the initiative power because it involves powers granted by the

---

[6] The dissent is correct that we may reach the merits of a case only if there is a "justiciable controversy" pursuant to chapter 7.24 RCW. *Walker v. Munro*, 124 Wn.2d 402, 879 P.2d 920 (1994). Absent a "justiciable controversy" the issue is moot. *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993). However, "an issue is not moot if a court can provide any effective relief." *Malkasian*, 157 Wn.2d at 259 (citing *State v. Turner*, 98 Wn.2d 731, 733, 658 P.2d 658 (1983)). We have unmistakably held that a postelection subject matter challenge to an initiative falls within the definition of "justiciable controversy." *Malkasian*, 157 Wn.2d at 261.

Even assuming mootness, this court adopted the following criteria to determine if a case, although moot, warrants review: "(1) whether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur." *Hart v. Dep't of Soc. & Health Servs.*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988). There is also an "arguable" fourth factor: "the level of genuine adverseness and the quality of advocacy of the issues." *Id.* All four factors demonstrate that review is warranted in this case: this is a public dispute; an authoritative determination is desirable to provide future guidance to public officers; this issue is not only likely to recur, it is recurring (currently, the intervenors have active petitions on their web site to challenge the adoption of red light cameras in the cities of Bellingham, Longview, Monroe, Redmond, and Wenatchee. WASH. STATE BANCAMS.COM, http://bancams.com/petition (last visited Mar. 2, 2011); and this case has been adequately briefed and argued.

legislature to the governing bodies of cities; under RCW 46.63.170 only the city of Mukilteo is authorized to enact ordinances governing the use and operation of automated traffic safety cameras.

¶26 We reverse the trial court's order denying declaratory relief.

OWENS, FAIRHURST, STEPHENS, and WIGGINS, JJ., concur.

¶27 J.M. JOHNSON, J. (dissenting) — This appeal asks us to consider a pre-election challenge to city of Mukilteo Proposition 1 (Prop 1), an advisory vote opposing automated traffic safety cameras (red-light cameras) in that city. Prop 1 was placed on the November 2010 general election ballot and endorsed by over 70 percent of Mukilteo voters. The Mukilteo City Council then voted to repeal the red-light cameras ordinance. The parties do not dispute the status of the law in Mukilteo; red-light cameras are no longer authorized. The majority does not claim anything unlawful was done here. The people exercised their right to petition. The city council put a relevant advisory issue on the ballot. The voters expressed a strong position, and the city council repealed a disfavored ordinance. As there is no justiciable controversy for us to resolve, the appeal is moot. Thus, I respectfully dissent.

A. The Appeal Is Moot

¶28 We may reach the merits of a trial court's decision to deny declaratory relief only if there is a "justiciable controversy" for the court to resolve pursuant to chapter 7.24 RCW. *Walker v. Munro*, 124 Wn.2d 402, 411, 879 P.2d 920 (1994); *Fed. Way Sch. Dist. No. 210 v. State*, 167 Wn.2d 514,

529, 219 P.3d 941 (2009). Otherwise, the case is moot and should be dismissed.[7]

¶29 We have defined "justiciable controversy" as

(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973).

¶30 Here, there is no longer an actual, present and existing dispute. Prop 1 was placed on the ballot and an election was held. Red-light cameras were opposed by voters, and the city council has repealed Ordinance 1246 (chapter 10.05 Mulkiteo Municipal Code), which had authorized the use of red-light cameras. Additionally, the actual state of the law in Mukilteo is not in dispute (Mukilteo Initiative 2 differs from Ordinance 1275).[8] Both parties concede Ordinance 1275, which repealed Ordinance 1246, represents the current state of the law in Mukilteo, whether that is because Prop 1 was not effective as an initiative[9] or because Prop 1 was an initiative outside the scope of the local initiative power.[10] An injunction to prevent Prop 1 from being placed on the ballot would have no effect years after the election was final.

¶31 The only issue that conceivably remains is whether the subject matter addressed by Prop 1 (the use of red-light

---

[7] *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993). "An appeal is moot where it presents purely academic issues and where it is not possible for the court to provide effective relief." *Id.*

[8] This difference may have a legal effect only on hypothetical issues not raised in this lawsuit.

[9] *See, e.g.*, Br. of Resp'ts City of Mukilteo and Christina Boughman at 3.

[10] *See, e.g.*, Appellant's Opening Br. at 8-15.

cameras) is outside the scope of the local initiative power. We should not reach this issue because the issue placed on the ballot was avowedly an advisory vote, not an initiative. Rendering a judgment on a hypothetical issue, therefore, would be tantamount to issuing an advisory opinion. This court, however, is not authorized by the Uniform Declaratory Judgments Act (chapter 7.24 RCW) to render advisory opinions or pronouncements upon abstract or speculative questions. *Munro*, 124 Wn.2d at 418 (citing *Wash. Beauty Coll., Inc. v. Huse*, 195 Wash. 160, 164, 80 P.2d 403 (1938)). Any remaining issue is academic, and it is not possible for the court to provide effective relief. Thus, such issue is also moot. *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993).

B. Prop 1 Was an Advisory Vote

¶32 RCW 29A.32.241 requires local voters' pamphlets to include the text of each ballot measure, an explanatory statement, and the arguments for and against each measure. RCW 29A.32.241(4), (5). The purpose of this requirement is straightforward: citizens should not be bound by a measure that they did not have the opportunity to examine thoroughly prior to voting on it.

¶33 Prop 1 did not include the text of Mukilteo Initiative 2. Prop 1, therefore, could not have been effective as an initiative. This was instead an advisory vote. As explained above, this conclusion renders moot the issue of whether the subject matter addressed by Prop 1 is outside the scope of the local initiative power.

¶34 Finally, the record does not disclose why the Mukilteo City Council voted to place Prop 1 on the ballot rather than Mukilteo Initiative 2.[11] However, no party sought to compel Mukilteo Initiative 2 to be placed on the

---

[11] The notable differences would have restricted adoption of red-light cameras by later councils.

ballot. Any Mukilteo residents who are concerned about such detail have available political remedies. Because the ordinance authorizing red-light cameras has been repealed per the wishes of Mukilteo voters, these issues have all been resolved politically rather than through judicial processes. Our system accommodates and relies on such resolution.

CONCLUSION

¶35 I would hold that Mukilteo Citizens for Simple Government's appeal is moot. Prop 1, an advisory vote opposing red-light cameras, was placed on the November 2010 ballot and endorsed by over 70 percent of Mukilteo voters. The city council has repealed the ordinance allowing the use of red-light cameras in Mukilteo. The matter was appropriately and constitutionally resolved through the political process. Not every issue requires judicial resolution. There is no justiciable controversy for us to resolve, and an injunction at this point would have no effect. Thus, I would affirm the trial court and respectfully dissent.

C. JOHNSON and CHAMBERS, JJ., and ALEXANDER, J. PRO TEM., concur with J.M. JOHNSON, J.