IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SPOKANE ENTREPRENEURIAL CENTER, SPOKANE COUNTY, DOWNTOWN SPOKANE PARTNERSHIP, GREATER SPOKANE INCORPORATED, THE SPOKANE BUILDING OWNERS AND MANAGERS ASSOCIATION, SPOKANE ASSOCIATION OF REALTORS, THE SPOKANE HOME BUILDERS ASSOCIATION, THE INLAND PACIFIC CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, AVISTA CORPORATION, PEARSON PACKAGING SYSTEMS, WILLIAM BUTLER, NEIL MULLER, STEVE SALVATORI, NANCY MCLAUGHLIN, MICHAEL ALLEN, and TOM POWER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 31887-7-III |
| Respondents, | ) ) | |
| v. | ) ) ) | |
| SPOKANE MOVES TO AMEND THE CONSTITUTION, ENVISION SPOKANE, VICKY DALTON, SPOKANE COUNTY AUDITOR, in her official capacity, THE CITY OF SPOKANE, | ) ) ) ) ) ) | UNPUBLISHED OPINION |
| Appellants. | ) | |

KORSMO, J. — This case involves a pre-election challenge to a Spokane initiative measure by a large number of individuals and organizations. We conclude that a pre-election challenge to a local initiative by private citizens can be brought only in very narrow circumstances and that this initiative does not constitute one of those occasions. The respondents lack the strong showing of standing necessary to prosecute this case as a pre-election challenge. We reverse.

FACTS

The respondents are 17 individuals, associations, businesses, and county government who initially brought this action in 2013 against the proponents of two separate Spokane initiatives. The first of those initiatives, sponsored by Spokane Moves to Amend the Constitution (SMAC), sought to address the *Citizens United*[1] decision by prohibiting corporations from lobbying public officials or making contributions to political campaigns. The second initiative was sponsored by Envision Spokane, the appellant in this action.

The Envision initiative sought to amend the city charter to create or guarantee individual rights.[2] It includes (1) a Neighborhood Rights provision that requires a neighborhood vote on zoning changes in conjunction with a "major commercial, industrial, or residential development;" (2) an Environmental Rights provision that gives the Spokane River and the Spokane Valley – Rathdrum Prairie Aquifer rights and grants standing to the city, citizens of the city, and groups of residents to enforce these rights; (3) a Workplace Rights initiative that adopts the federal and state[3] Bill of Rights and purports to extend them to the workplace and also gives unionized workers the right to collective bargaining; and (4) a Corporate Rights provision that strips corporations of

---

[1] *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010).

[2] The entire initiative can be found as an appendix to this opinion.

[3] The initiative does not explain what constitutes the state Bill of Rights.

their legal status should they violate any of the other three provisions of the initiative. The initiative also contains a severability clause.

Envision had brought the same initiative to the ballot in 2011, and a much different version had appeared on the ballot in 2009. Both failed with the voters of Spokane, although the 2011 initiative had received 49.1 percent of the vote. The SMAC proposal likewise had failed at the ballot in 2011.

Both initiatives again qualified for the ballot in 2013. The Spokane City Attorney prepared a memorandum for the City Council suggesting that the initiatives were invalid. The City Attorney also obtained a memorandum from a private law firm reaching the same conclusion. However, when presented with the two initiatives, the City Council on June 3, 2013, declined to take legal action[4] and, instead, forwarded the two initiatives by resolution to the Spokane County Auditor for inclusion on the 2013 general election ballot.

The respondents filed actions to enjoin both initiatives and to obtain declaratory judgments invalidating them. The initiative sponsors, the City of Spokane, and the Spokane County Auditor were named as defendants. The respondents filed numerous affidavits describing their disagreement with the two initiatives as well as the potential repercussions on their business interests if the initiatives were enacted. Envision answered the complaint and challenged standing, the availability of a declaratory judgment as a

---

[4] The Spokane Municipal Code permits the City Council, by a five vote supermajority, to challenge an initiative after forwarding it to the ballot. SMC 2.02.115(C).

remedy, the merits of the complaint, and raised an anti-SLAPP defense.[5] The County

Auditor answered the complaint, recognized that she was sued only in her professional

capacity, and asked that the trial court act rapidly with clear directions since time was of

the essence. The City's answer is not part of the record of this appeal.[6]

In response to the request for a preliminary injunction, Envision filed a motion to

strike pursuant to RCW 4.24.525 of the anti-SLAPP statute. In the course of its argument,

Envision contended, *inter alia*, that the plaintiffs lacked standing to pursue the injunction.

The trial court denied the preliminary injunction that sought to keep both initiatives off the

2013 ballot, concluding that respondents had not established imminent irreparable harm.

The two initiatives then proceeded to a declaratory judgment hearing the following month.

Because the two initiatives were joined for hearing, respondents' memorandum and

affidavits addressed both. Respondents' contentions in support of standing largely

addressed free speech rights imperiled by the SMAC initiative. Clerk's Papers (CP) at

222-29. Envision challenged justiciability, arguing respondents had no genuine

controversy prior to adoption of the initiative and had not been harmed simply by placing

the issue on the ballot. The County Auditor advised the court that after September 4,

2013, it would be impossible to remove the initiatives from the ballot.

---

[5] Strategic Lawsuits Against Public Participation, RCW 4.24.500-.525.

[6] The City's position at the declaratory judgment was to advise the court that if any initiatives were invalid, they should not be put on the ballot lest city tax money be wasted.

4

The trial court heard argument August 23, 2013, and orally ruled at the conclusion of the hearing. With respect to the issue of standing, the court indicated that it stood by its earlier ruling on the injunction request that the parties had standing and that a justiciable controversy existed.[7] The court struck down both the SMAC initiative and the Envision initiative. The trial court concluded that the entire subject matter of both initiatives was outside the scope of the initiative power.[8] The County Auditor was directed not to place them on the ballot.

Written findings of fact and order on declaratory judgment were entered August 29. Envision promptly appealed to this court.[9] Envision also sought an emergency stay of the ruling in an effort to maintain its position on the ballot. By written order entered September 3, 2013, a commissioner of this court declined to grant the stay. In light of the fact that the following day was the deadline for inclusion on the ballot, no motion to modify the ruling was filed.

---

[7] The transcript of the injunction hearing is not part of the record of this appeal. While the absence of the transcript is understandable in light of the issues argued by the parties, that fact complicates our review.

[8] The trial court concluded that the Neighborhood Rights provision was administrative rather than legislative in nature and also attempted to exercise power delegated to a legislative body; the Environmental Rights provision failed because it was administrative rather than legislative in nature, it attempted to exercise power not granted to cities, and it conflicted with state or federal law; the Workplace Rights provision failed because it exercised power not granted to cities and conflicted with state or federal law; and the Corporate Rights provision conflicted with state or federal law.

[9] The ruling on the SMAC initiative was not appealed.

5

In its brief, Envision briefly argued that the respondents lacked standing to pursue injunctive relief, but did have standing to pursue the declaratory judgment action.[10] It reiterated that opinion at oral argument.

ANALYSIS

The sole issue we address is whether the respondents had standing to bring this pre-election challenge.[11] After looking generally at standing and related issues governing judicial review of the pre-election process, we will address respondents' standing claims. We conclude that a heightened showing of standing is in order for pre-trial election challenges and the respondents have not satisfied that standard in this case.

Efforts to derail prospective legislation through a lawsuit necessarily bring the judicial and legislative powers into conflict. When the legislative process in question involves the constitutionally or statutorily protected right of citizens to initiate legislation, courts have an additional reason to step gingerly. In order to avoid significant separation of powers problems, courts have recognized both substantive and prudential limitations on the exercise of judicial authority when addressing potential legislation.

One substantive limitation, applicable to all litigation, is the standing doctrine. In actions under the Uniform Declaratory Judgment Act (UDJA), the Washington Supreme

---

[10] In view of the fact that Envision prevailed on the injunction and, therefore, is not an aggrieved party within the meaning of RAP 3.1, we need not discuss standing to pursue the injunction.

[11] We express no opinion concerning the trial court's ruling that the Envision initiative is invalid.

6

Court "has established a two-part test to determine standing." *Grant County Fire Prot. Dist. v. Moses Lake*, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). First, the test asks "whether the interest sought to be protected is arguably within the zone of interests to be protected or regulated by the statute" in question. *Id.* (internal quotation and citation omitted). Second, "the test considers whether the challenged action has caused injury in fact, economic or otherwise, to the party seeking standing." *Id.* (internal quotations omitted).

The issue of standing is reviewed de novo by appellate courts. *Knight v. City of Yelm*, 173 Wn.2d 325, 336, 267 P.3d 973 (2011). Standing is a jurisdictional concern that can be presented for the first time on appeal. RAP 2.5(a)(1); *Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports*, 146 Wn.2d 207, 212-13 n.3, 45 P.3d 186 (2002). An appellate court can even raise the issue sua sponte.[12] *In re Recall of West*, 156 Wn.2d 244, 248, 126 P.3d 798 (2006); *Branson v. Port of Seattle*, 152 Wn.2d 862, 875 n.6, 101 P.3d 67 (2004).

Justiciability is another substantive doctrine applicable to declaratory judgment actions. Broadly speaking, justiciability requires that there be a genuine controversy between two parties. As defined for purposes of a declaratory judgment action, justiciability requires (1) an actual, present and existing dispute (2) between parties

---

[12] When the parties do not present evidence or argument on the issue, an appellate court typically will allow the parties the opportunity to brief or otherwise be heard on an issue. RAP 10.1(h). Here, the parties did develop the standing issue in the trial court and discussed it in their briefing in that court and this one.

having genuine and opposing interests (3) that are substantial rather than potential or theoretical (4) that a court can conclusively resolve. *Coppernoll v. Reed*, 155 Wn.2d 290, 300, 119 P.3d 318 (2005). "Justiciability is a threshold inquiry and must be answered in the affirmative before a court may address the merits of a litigant's claim." *Id.*

Various prudential doctrines also have shaped the judicial approach to pre-election litigation. Washington courts have long declined to issue advisory opinions. *Id.* at 297-98; *State ex rel. Campbell v. Superior Court of Pierce County*, 25 Wash. 271, 274, 65 P. 183 (1901). Courts also have a long history of avoiding political questions since those matters may require a court to interfere with the political authority of another branch of government. *Brown v. Owen*, 165 Wn.2d 706, 719, 206 P.3d 310 (2009); *State v. Manussier*, 129 Wn.2d 652, 670-71, 921 P.2d 473 (1996) (expressly recognizing a challenge to the initiative process as presenting a political question); *Parmeter v. Bourne*, 8 Wash. 45, 50, 35 P. 586 (1894) (declining to consider challenge to election results). Accordingly, courts must also respect, and not interfere with, the legislative process, including the initiative process. *Coppernoll*, 155 Wn.2d at 296-97.

Consideration of these prudential doctrines led the *Coppernoll* court to authoritatively address the role of the judiciary in responding to pre-election challenges to an initiative or referendum. It concluded that pre-election challenges could be entertained only when they involved either (1) procedural challenges to placing the initiative on the ballot or (2) the subject matter of the initiative was beyond the initiative power. *Id.* at 297. The court

characterized these as "prudential" exceptions to the non-involvement doctrine. *Id.* at 301.

Two years later, the court nicely summarized its *Coppernoll* decision:

Preelection review of initiative measures is highly disfavored. The fundamental reason is that 'the right of initiative is nearly as old as our constitution itself, deeply ingrained in our state's history, and widely revered as a powerful check and balance on the other branches of government.' Given the preeminence of the initiative right, preelection challenges to the substantive validity of initiatives are particularly disallowed. Such review, if engaged in, would involve the court in rendering advisory opinions, would violate ripeness requirements, would undermine the policy of avoiding unnecessary constitutional questions, and would constitute unwarranted judicial meddling with the legislative process. Thus, preelection substantive challenges are not justiciable. Further, substantive preelection review could unduly infringe on the citizens' right to freely express their views to their elected representatives.

We will therefore consider only two types of challenges to an initiative prior to an election: that the initiative does not meet the procedural requirements for placement on the ballot (a claim that appellants do not make here) and that the subject matter of the initiative is beyond the people's initiative power. If an initiative otherwise meets procedural requirements, is legislative in nature, and its 'fundamental and overriding purpose' is within the State's broad power to enact, it is not subject to preelection review. That the law enacted by an initiative might be unconstitutional does not mean that it is beyond the power of the State to enact. Therefore, a claim that an initiative would be unconstitutional if enacted is not subject to preelection review.

*Futurewise v. Reed*, 161 Wn.2d 407, 410-411, 166 P.3d 708 (2007) (internal citations and footnote omitted).

"Standing requirements tend to overlap the requirements for justiciability under the UDJA." *Am. Legion Post v. Dep't of Health*, 164 Wn.2d 570, 593, 192 P.3d 306 (2008). This observation highlights the heart of the problem presented in this case. UDJA standing

and justiciability in the pre-election context both require that there be an existing actual dispute that is substantial rather than potential. *Coppernoll*, 155 Wn.2d at 300. Standing typically is liberally granted in UDJA actions. However, the noted prudential concerns require courts to narrowly construe the scope of the UDJA in pre-election challenges, putting the liberal standing of typical declaratory judgment cases and the limited justiciability of pre-election challenges in tension, if not in conflict. With these issues in mind, it finally is time to turn to the standing problem in this case.

In their motion for declaratory judgment, the plaintiffs claimed standing to challenge the Envision initiative under the zone of interests test in this manner:

> The Envision initiative seeks to regulate zoning, river rights, employment relationships, and corporate rights, each of which affects Plaintiffs' interests.
>
> Plaintiff business associations' and owners' abilities to continue or launch development projects will be regulated by the zoning provision, which purports to overturn the process for obtaining zoning variances. . . .
>
> The initiative's river rights provision will impair the present sanitary sewage collection, treatment, and disposal system operations of Plaintiff Spokane County, and the hydroelectric power operations of Plaintiff Avista. . . .
>
> The workplace provision will prevent Plaintiffs from enforcing workplace policies and from communicating effectively with their employees. . . .

CP at 225-26 (internal citations to supporting documents omitted). The plaintiffs also claimed that the public importance of the two initiatives justified standing. CP at 224, 229. In terms of perceived injury from the initiatives, the plaintiffs primarily stressed an infringement on free speech and communication. CP at 226-29.

10

Notably, the plaintiffs did not argue to the trial court their standing to challenge the Corporate Rights provision. Their remaining assertions of interest vaguely allege fear of potential litigation. The best developed arguments involved the effect of the Environmental Rights provision on use of the Spokane River.[13] Spokane County's interest in the Environmental Rights provision stems from its assertion that the initiative will "impair" its sewage collection and treatment operations. Its supporting declaration shows that it maintains a sewage treatment plant on the Spokane River and that passage of the Envision initiative might increase costs by subjecting the County to additional litigation. Avista Corporation made similar claims, citing the potential for litigation as one of its concerns about the Environmental Rights provision.[14] It gave as an example the possibility that it might be sued over the storage of water in Lake Coeur d'Alene, as required by its federal licensing agreement, by someone who prefers a stronger river flow.

Liberally construed, the fact that both Spokane County and Avista use the Spokane River might "arguably" put them "within the zone of interests" of the Environmental Rights provision since it addresses the same river. However, in the context of a pre-election challenge, we think that more should be required than simply

---

[13] For this reason, we will only address the standing claims involving the Environmental Rights provision. Other assertions included contentions that the Workplace Rights provision would make it impossible for employers to talk to employees or even more generalized complaints that the initiatives were bad for business.

[14] Avista was the only plaintiff/respondent to assert standing with respect to all four provisions of the Envision initiative.

11

the fact that those plaintiffs can hypothesize someone asserting a claim against them on behalf of the river system. The initiative must, in our opinion, more directly relate to Spokane County or Avista's use of the river.[15]

An example of a direct relationship is found in *Am. Traffic Solutions v. Bellingham*, 163 Wn. App. 427, 260 P.3d 245 (2011), *review denied*, 173 Wn.2d 1029 (2012). There the City of Bellingham had entered into a contract with American Traffic Solutions (ATS) to install an automatic traffic safety camera system ("red light cameras"). *Id.* at 430. Opponents filed an initiative to prohibit use of the cameras and ATS sued to block the initiative from the ballot. *Id.* at 430-31. On appeal, the opponents contended ATS lacked standing to bring the action, thus rendering the matter non-justiciable. *Id.* at 432. Division One of this court concluded that because ATS was "a party to the contract," it "clearly" had standing to challenge the initiative. *Id.* at 433. In our view, ATS was in the center of the zone of interests since it had a contract with the city that would be affected if the initiative passed. This aspect of standing was satisfied.

The other aspect of standing is whether the party has suffered an "injury in fact, economic or otherwise." *Grant County*, 150 Wn.2d at 802. Here, while both Avista and Spokane County express a fear of potential litigation, they can point to no direct harm

---

[15] A different situation would be presented if the initiative had, for instance, expressly attempted to authorize litigation concerning water returned to the river following use for hydroelectric generation or sewage treatment. Those examples would specifically target current usage and bring Avista and Spokane County squarely within the zone of interests of the initiative.

from the initiative. There is no existing project that is named in the initiative or that specifically would be impacted by the broad and very general terms of the initiative. We believe a more concrete showing of likely harm is necessary to establish an injury in fact that would justify a pre-election challenge. Once again, *American Traffic* provides an example. There an existing contract would be impaired immediately upon passage of the initiative, leaving very little time in which to seek relief. That is a sufficiently direct injury to supply standing.

In contrast here, post-election litigation still would be a practical remedy for Spokane County or Avista were the Envision initiative to pass. Either could bring a post-election declaratory action or defend a suit against it on the basis of the initiative's invalidity. Until the initiative passes, any harm to the respondents is necessarily speculative and would be dependent upon someone trying to use the initiative against them. This is too indefinite to justify pre-election judicial intervention.

None of the existing pre-election standing cases require a different result. One such case is *Mukilteo Citizens v. City of Mukilteo*, 174 Wn.2d 41, 272 P.3d 227 (2012). That case involved another challenge by one group of city residents to an anti-automatic traffic safety camera initiative offered by another group of city residents. *Id.* at 43-44. The trial court denied the opponents' request for an injunction, the initiative was enacted at the ensuing election, and the opponents appealed. *Id.* at 44-46. The initiative proponents challenged the standing of the opponents, who were acting as an association.

13

*Id.* at 46. The court determined that there was associational standing. *Id.* The first prong of the test for associational standing is whether the individual members of the group have individual standing.[16] *Id.* In answering that question in *Mukilteo*, the court stated that the "members have standing to sue in their own right as it consists of Mukilteo residents who are eligible to vote." *Id.*

We do not believe that the *Mukilteo* court was conferring standing to challenge an initiative on any person who could vote on the initiative. In addition to being a roadmap to detouring every local initiative to the courtroom, it simply was not the issue before the court in *Mukilteo*. The court conducted no analysis of the issue of individual standing in accordance with its traditional zone of interest test and cited no relevant authority in support of its statement. Instead, the statement seems simply to indicate that the association's members had standing and, therefore, the association could act in their behest. If the court meant more, it will undoubtedly develop its reasoning in terms of individual standing in a future case.

Most other cases of pre-election standing involve actions brought by the local government against proponents of an initiative. *E.g.*, *City of Longview v. Wallin*, 174 Wn. App. 763, 301 P.3d 45 (2013) (city blocked red light camera initiative). The

---

[16] It is for this reason we need not address standing claimed by the business association respondents. Their membership cannot establish individual standing, so the association cannot. We do not address whether the associations' participation in this lawsuit was "germane to the purpose" of each association. *Am. Legion*, 164 Wn.2d at 595-96.

14

effected government typically will have standing to challenge an initiative due to the expense of holding the election and the need to defend the initiative should it pass. In some private party cases, our courts have rejected pre-election challenges without addressing the party's standing. *E.g., Futurewise*, 161 Wn.2d at 407 (determining challenges were substantive and could not be considered pre-election); *Coppernoll*, 155 Wn.2d at 290 (ruling that initiative did not exceed scope of legislative power). In still other cases, the basis for private party standing was not explained. *E.g., Seattle Bldg. and Constr. Trades Council v. Seattle*, 94 Wn.2d 740, 620 P.2d 82 (1980); *Ford v. Logan*, 79 Wn.2d 147, 483 P.2d 1247 (1971).

One basis that might have applied in *Seattle Building* and in *Ford* is public interest standing, an argument also raised by the respondents in their briefing to the trial court.[17] In general, public interest standing is granted when the case presents an issue of great significance that needs court resolution. *Farris v. Munro*, 99 Wn.2d 326, 330, 662 P.2d 821 (1983) (upholding standing to challenge constitutionality of state lottery due to tax importance of the lottery). Citing the proliferation of red light traffic camera challenges,

---

[17] Although not raised in the trial court briefing, several of the respondents claimed taxpayer standing in their declarations. However, taxpayer standing is not appropriate unless the "proper public official," typically the Attorney General, first declines a request to bring suit on behalf of all taxpayers. *Farris v. Munro*, 99 Wn.2d at 329. *Accord, Friends of North Spokane County Parks v. Spokane County*, __ Wn. App. __, 336 P.3d 632, 640 (2014). There was no such request in this case and we, therefore, do not consider this as a case of taxpayer standing.

15

Division One stated that public interest standing was an alternative basis for finding standing in *American Traffic Solutions*. *Am. Traffic Solutions*, 163 Wn. App. at 433.

We conclude this is not a case for granting public importance standing. While the Envision initiative is recurring in Spokane, there do not appear to have been several similar initiatives in other local jurisdictions nor any evidence suggesting that this initiative presents questions of concern outside of the Spokane area. Thus, the situation presented by *American Traffic Solutions* is not involved in this case. Similarly, we are not convinced that a pending local initiative is equivalent to a voter approved state constitutional provision. The critical fact in *Farris* was that the constitutional provision had become law and was not merely a potential law. Few proposed laws present an issue of public importance prior to adoption. While there certainly may be local initiatives that present questions of public importance[18] prior to adoption by the voters, this is not one of those cases.[19]

Accordingly, we conclude that the respondents lacked standing to prosecute this pre-election challenge. They were not so clearly situated in the center of the zone of interests, nor as certainly to suffer immediate harm from adoption of the initiative, that

---

[18] In contrast, an effort to rescind a county's charter by initiative does provide an example of a question of public importance. *See Ford*, 79 Wn.2d at 157.

[19] While there may have been several reasons for its decision, the failure of the Spokane City Council to challenge the initiative despite the legal advice of the City Attorney, can also be viewed as evidence that the initiative did not present an issue of public importance. Local governments are the local policy making bodies and have a better view than the judiciary concerning which issues are of public importance.

they have demonstrated standing to pursue this action. Similarly, the public importance standing doctrine does not extend to this potential local law prior to its adoption by the voters. There thus was no justiciable question presented.

This case, however, does contrast nicely with the situation presented by the SMAC initiative. As previously noted, that initiative attempted to impose limits on corporations by controlling their ability to contribute to elections or lobby public officials. Since the thrust of the initiative was to limit corporate speech as defined in part by the *Citizens United* decision, the corporate respondents in this case—and those who dealt with them—were easily in the center of the zone of interests of that initiative. Additionally, those respondents faced an immediate harm from the initiative in the form of restriction on free speech rights that could not have been timely parried by a post-election lawsuit. There was standing to challenge the SMAC initiative.[20] The plaintiffs were not similarly situated with respect to the Envision initiative.

In summary, we conclude that, in order for a *private* party to bring a *pre-election* challenge to a local initiative, the party must establish both that it is in the center of the zone of interests affected by the initiative *and* that the certainty of *immediate specific harm* to that party is such that a post-election lawsuit is not a practical remedy for the party. In the absence of this strong showing of standing, the pre-election challenge is not

---

[20] The ease with which the respondents could demonstrate standing in the SMAC case may be the basis why the standing ruling is not as well-developed in Envision. In a sense, the Envision case rode on the coattails of the SMAC case in the trial court, but cannot do so here.

justiciable. Speculative standing based on fears about how a provision, if adopted by voters, might potentially be used in some future litigation is too unspecific a fear to justify judicial intervention in the electoral process. A court would have to give an advisory opinion on a political question—two practices that courts generally attempt to avoid.

The need for a strong showing of standing is highlighted by cases—such as this one—where both parties now prefer judicial approval for their position. The respondents understandably want to avoid yet a third election campaign and put this matter to rest for good. Envision, having been denied a place on the 2013 ballot, equally understandably now would like to have a court prospectively inform the electorate that its initiative, in whole or in part, is valid. These desires should not unnecessarily draw the judiciary into deciding a political question that might not actually present itself if the voters again decline to adopt the Envision initiative. Instead, the prudential concerns that limit justiciability should also apply to ensure that would-be plaintiffs have undisputable standing to raise their challenge before they are allowed to derail an election.

The City of Spokane had standing to challenge the Envision initiative if it had desired to do so. However, respondents could not obtain that same standing simply by making the same arguments that the City could have presented.[21] There needed to be a

---

[21] We do not opine on the respondents' post-election standing other than to note that the standards of pre-election standing do not apply.

showing that the respondents would truly be affected by the initiative and that the harm from the initiative would require immediate court intervention. That has not happened here.

The order granting the declaratory judgment against Envision is reversed and this matter is remanded for the City of Spokane to place the initiative on the next available ballot in accordance with its June 3, 2013 resolution.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, J.

# APPENDIX

## A CITY CHARTER AMENDMENT ESTABLISHING A COMMUNITY BILL OF RIGHTS

Whereas, the people of the City of Spokane wish to build a healthy, sustainable, and democratic community;

Whereas, the people of the City of Spokane wish to build that community by securing the rights, freedoms, and well-being of residents, workers, neighborhoods, and the natural environment;

Whereas, the people of the City of Spokane recognize their responsibility to be well-informed and involved citizens of the City of Spokane, to be stewards of the natural environment, and to assume the responsibility for enforcing their rights and the rights of others;

Whereas, the people of the City of Spokane have adopted a Comprehensive Plan for the City of Spokane, which envisions the building of a healthy, sustainable, and democratic community, but the people recognize that the Comprehensive Plan is not legally enforceable in many important respects;

Whereas, the people of the City of Spokane wish to create a Community Bill of Rights which would, among other goals, establish legally enforceable rights and duties to implement the vision laid out in the Comprehensive Plan; and

Whereas, the people of the City of Spokane wish to create a Community Bill of Rights, which would elevate the rights of the community over those of corporations.

NOW, THEREFORE, THE PEOPLE OF THE CITY OF SPOKANE HEREBY ORDAIN:

Section 1. A new section be added to the beginning of the Charter of the City of Spokane, which shall be known as the "Community Bill of Rights," and which provides as follows:

FIRST, NEIGHBORHOOD RESIDENTS HAVE THE RIGHT TO DETERMINE MAJOR DEVELOPMENT IN THEIR NEIGHBORHOODS.

> Neighborhood majorities shall have the right to approve all zoning changes proposed for their neighborhood involving major commercial, industrial, or residential development. Neighborhood majorities shall mean the majority of registered voters residing in an official city neighborhood who voted in the last general election. Proposed commercial or industrial development shall be deemed major if it exceeds ten thousand square feet, and proposed residential development shall be deemed major if it exceeds twenty units and its construction is not financed by governmental funds allocated for low-income housing.

> It shall be the responsibility of the proposer of the zoning change to acquire the approval of the neighborhood majority, and the zoning change shall not be effective without it. Neighborhood majorities shall also have a right to reject major commercial, industrial, or

residential development which is incompatible with the provisions of the City's Comprehensive Plan or this Charter.

Approval of a zoning change or rejection of proposed development under this section shall become effective upon the submission of a petition to the City containing the valid signatures of neighborhood majorities approving the zoning change or rejecting the proposed development, in a petition generally conforming to the referendum provisions of the Spokane municipal code.

SECOND, THE RIGHT TO A HEALTHY SPOKANE RIVER AND AQUIFER.

The Spokane River, it tributaries, and the Spokane Valley-Rathdrum Prairie Aquifer possess fundamental and inalienable rights to exist and flourish, which shall include the right to sustainable recharge, flows sufficient to protect native fish habitat, and clean water. All residents of Spokane possess fundamental and inalienable rights to sustainably access, use, consume, and preserve water drawn from natural cycles that provide water necessary to sustain life within the City. The City of Spokane, and any resident of the City or group of residents, have standing to enforce and protect these rights.

THIRD, EMPLOYEES HAVE THE RIGHT TO CONSTITUTIONAL PROTECTIONS IN THE WORKPLACE.

Employees shall possess United States and Washington Bill of Rights' constitutional protections in every workplace within the City of Spokane, and workers in unionized workplaces shall possess the right to collective bargaining.

FOURTH, CORPORATE POWERS SHALL BE SUBORDINATE TO PEOPLE'S RIGHTS.

Corporations and other business entities which violate the rights secured by this Charter shall not be deemed to be "persons," nor possess any other legal rights, privileges, powers, or protections which would interfere with the enforcement of rights enumerated by this Charter.

Section 2. Effective Date of Amendment to City Charter. If approved by the electors, this City Charter amendment shall take effect and be in full force upon issuance of the certificate of election by the Spokane County Auditor's Office.

Section 3. All ordinances, resolutions, motions, or orders in conflict with this City Charter amendment are hereby repealed to the extent of such conflict. If any part or provision of these Charter provisions is held invalid, the remainder of these provisions shall not be affected by such a holding and shall continue in full force and effect.