# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| TIM EYMAN, | No.  50819-2-II |
| Appellant, | |
| v. | PUBLISHED OPINION |
| ROBERT  FERGUSON,  in  his  capacity  as Attorney General for the State of Washington, | |
| Respondent. | |

BJORGEN, J. — Tim Eyman sought a declaratory judgment that RCW 43.135.041[1] requires separate advisory votes for each tax increase set forth in Engrossed House Bill (EHB) 2163, which was signed into law by the Governor on July 7, 2017.  EHB 2163, 65th Leg., 3rd Spec. Sess. (Wash. 2017).  The superior court dismissed Eyman's action for declaratory relief, Eyman appealed directly to the Supreme Court, and the Supreme Court transferred this case to our court for review.

Eyman argues that his appeal is not moot and that the superior court improperly dismissed his action for declaratory relief as untimely.  He also argues that the Attorney General's designation of a single advisory vote on EHB 2163 was inconsistent with the general

---

[1] This statute addresses the duties of the Attorney General and Secretary of State where the legislature has passed tax legislation requiring an advisory vote by the people of Washington.

purpose of Initiative 960, which amended RCW 43.135.041, and with the plain language of that statute.

We hold that Eyman's appeal is moot, but presents matters of continuing and substantial public interest. For that reason, we exercise our discretion to decide it. We also hold that the superior court did not err when it dismissed Eyman's action for declaratory relief as untimely. For that reason, we do not reach the merits of Eyman's claim.

We affirm.

FACTS

Initiative 960 was approved by the voters in 2007. LAWS OF 2008, 60th Leg., Reg. Sess., ch. 1. This initiative requires that an advisory vote be held on any legislative tax increases which are not otherwise subject to public vote. RCW 43.135.041(1)(a).

On June 30, 2017, the legislature passed EHB 2163, which, among other matters, amended three different excise taxes. First, the measure eliminated the retail sales and use tax exemption for food and food ingredients as it applied to bottled water. EHB 2163, §§ 101, 102. Second, the bill narrowed a use tax exemption so that it no longer applied to refinery fuel consumed or used in Washington. *Id*. § 107. Third, the bill modified the business and occupation tax nexus, so that the tax applied to more business activity than it previously did. *Id*. § 301. Each of these provisions effectively raised taxes.

On July 27, the Attorney General designated the legislation for a single advisory vote on all three excise tax amendments and provided notice to the Secretary of State. The notice stated that

> [w]ithin five days of receiving from your office a serial number for and copy of each of these measures as provided in RCW 29A.72.040, the Attorney General's Office will transmit to you a short description of each measure for the next general election ballot, as provided in RCW 29A.72.283.

Clerk's Papers (CP) at 107. The notice from the Attorney General also designated EHB 2163 as Advisory Vote No. 17.

That same day, Eyman e-mailed the Attorney General, stating, "[A]s you can see below, EHB 2163 had 3 different revenue sources. So each needs to be its own advisory vote." CP at 13. The Attorney General disagreed, stating that it treats the subcategories of excise taxes under RCW Title 82 as a single revenue source—excise taxes.

On August 3, the Attorney General provided the Secretary of State with the following short description of Advisory Vote No. 17 to be printed on the general election ballot:

> The legislature expanded, without a vote of the people, the business and occupation tax and narrowed certain retail sales and use tax exemptions, costing $565,000,000 in the first ten years, for government spending.
>
> This tax increase should be:
>
> Repealed [ ]
>
> Maintained [ ]

CP at 108.

On August 4, Eyman filed a petition for declaratory judgment challenging the Attorney General's designation of Advisory Vote No. 17 as a single advisory vote. In his prayer for relief, Eyman requested, in part, as follows:

> a. For Declaratory Judgment declaring that Engrossed House Bill 2163 enacts three discrete tax increases.
> b. For Declaratory Judgment declaring that Engrossed House Bill 2163 derives tax revenue from three discrete revenue sources.
> c. For Declaratory Judgment declaring that the Attorney General's decision to seek one advisory vote for the tax increases imposed by EHB 2163 is therefore unlawful.

CP at 8-9.

3

The superior court denied Eyman's petition, concluding that Eyman's action was untimely because the statute provided that once the ballot language has been established it cannot be appealed. The superior court did not reach the merits of Eyman's petition.

Eyman sought direct review at the Supreme Court, and the Supreme Court transferred his appeal to our court for review.

Meanwhile, on Election Day 2017, Washingtonians voted on Advisory Vote No. 17. By more than 62 percent, the people called for repeal of EHB 2163.[2]

ANALYSIS

I. MOOTNESS

The State argues that Eyman's claims are moot because the people of Washington have already voted on EHB 2163 and the public interest exception to the mootness doctrine does not apply. Eyman argues there is an actual, present and existing dispute and that, even if his claims were moot, we should address the merits of his appeal because it involves matters of continuing and substantial public interest. For the following reasons, we hold that Eyman's appeal is moot, but presents issues of continuing and substantial public interest. Thus, we will address it.

A.     Legal Principles and Standard of Review

Justiciability is a threshold requirement that must be satisfied before we may address Eyman's claims. *See Lee v. State*, 185 Wn.2d 608, 616, 374 P.3d 157 (2016). We review justiciability de novo. *City of Longview v. Wallin*, 174 Wn. App. 763, 777, 301 P.3d 45 (2013).

---

[2] We take judicial notice of this fact because it bears on mootness. "A court may take judicial notice, whether requested or not." ER 201(c). The results can be found at: https://results.vote.wa.gov/results/20171107/Advisory-Votes-Advisory-Vote-No-17-Engrossed-House-Bill-2163.html.

Under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW, and in the absence of issues of "broad, overriding, public import," there must be a justiciable controversy

"(1) which is an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive."

*Lee*, 185 Wn.2d at 616 (quoting *Diversified Indus. Dev. Corp. v. Ripley*, 82 Wn.2d 811, 815, 514 P.2d 137 (1973)). Each of these four requirements must be met. Otherwise, the court "steps into the prohibited area of advisory opinions." *Diversified*, 82 Wn.2d at 815.

The first prong of this test requires us to address mootness. A case is moot, and should be dismissed, when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005).

However, an appellate court may, in its discretion, retain and decide an appeal which has otherwise become moot when it can be said that matters of continuing and substantial public interest are involved. *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972). In deciding whether a case presents matters of continuing and substantial public interest, three factors are particularly determinative:

"(1) [W]hether the issue is of a public or private nature; (2) whether an authoritative determination is desirable to provide future guidance to public officers; and (3) whether the issue is likely to recur." A fourth factor may also play a role: "the level of genuine adverseness and the quality of advocacy of the issues." Lastly, the court may consider the "likelihood that the issue will escape review because the facts of the controversy are short-lived."

*Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 796, 225 P.3d 213 (2009) (quoting *In re Marriage of Horner*, 151 Wn.2d 884, 892, 93 P.3d 124 (2004)). In *Hart v. Department of Social*

& *Health Services*, 111 Wn.2d 445, 448, 759 P.2d 1206 (1988), the Supreme Court stated that all criteria to be considered are "essential" in deciding whether to review a moot case.

In determining whether a moot case presents matters of continuing and substantial public interest, the Supreme Court has also examined "'the level of genuine adverseness and the quality of advocacy of the issues'" and "'the likelihood that the issue will escape review because the facts of the controversy are short-lived.'" *Westerman v. Cary*, 125 Wn.2d 277, 286-87, 892 P.2d 1067 (1994) (quoting *Hart*, 111 Wn.2d at 448) (quoting *Seattle v. State*, 100 Wn.2d 232, 250, 668 P.2d 1266 (1983) (Rosellini, J., dissenting)). In addition, the court has recognized that "[a]fter a hearing on the merits, it is a waste of judicial resources to dismiss an appeal on an issue of public importance which is likely to recur in the future." *Orwick v. City of Seattle*, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

B.      Mootness

Eyman contends his appeal is not moot. We disagree.

Eyman cites *Mukilteo Citizens for Simple Government v. City of Mukilteo*, 174 Wn.2d 41, 272 P.3d 227 (2012) to support his argument. There, an association of city residents filed a complaint seeking declaratory and injunctive relief to prevent the placement on the ballot of a local measure repealing an ordinance that authorized the use of automated traffic safety cameras in the city. In a dissent, Justice Johnson argued that the advisory nature of the public vote weighed in favor of mootness.

The issue decided in *Mukilteo* was whether the measure exceeded the scope of the initiative power because it involved powers granted by the legislature to the governing bodies of cities. 174 Wn.2d at 52-53. The majority opinion held that the measure exceeded the initiative

power, but it did not discuss mootness in doing so. Thus, Eyman's reliance on *Mukilteo* is inapposite.

EHB 2163 has now been voted on by the people through a single advisory vote in which a majority advised its repeal. Thus, the single advisory vote that Eyman challenged has become an accomplished fact. We cannot now prevent an action that has already occurred. *See, e.g.*, *State ex rel. Jones v. Byers*, 24 Wn.2d 730, 733, 167 P.2d 464 (1946). Whether Eyman was right or wrong in his original contention, we can no longer provide him effective relief. His challenge to the single advisory vote on EHB 2163 is now a purely abstract and academic matter.

Accordingly, we hold Eyman's appeal is moot.

C.    Continuing and Substantial Public Interest Exception

Eyman argues that even if his claims are moot, we should address the merits of his appeal because it involves matters of continuing and substantial public interest necessitating judicial resolution. The State argues that because each piece of tax legislation involves a unique combination of elements, the public interest exception to the mootness doctrine does not apply, and that we should avoid issuing an advisory opinion. We agree with Eyman.

In determining the degree of public interest, we first consider whether or not the matter is of a private or public nature. *Satomi*, 167 Wn.2d at 796. The content of a ballot and issues of statutory interpretation are generally matters of substantial public interest, and this factor weighs heavily in favor of applying the exception. The gravity of the interest is not substantially reduced by the advisory nature of the measures at issue.

We next consider the need for guidance to public officials. *Satomi*, 167 Wn.2d at 796. The State argues that Eyman's claims are specific to EHB 2163 and that our application of the advisory vote statutes to EHB 2163 will not necessarily resolve future issues about different,

7

newly adopted laws. Therefore, the State argues, a decision will not be authoritative in other circumstances, especially considering the myriad forms tax legislation can ultimately take.

However, the timeliness and appealability issues here presented do not depend on the nature of the tax increase at issue. Nor does the issue of consolidation, since the State argues that all excise taxes are a single revenue source, while Eyman argues that each specific excise tax is a separate source. That is the basic issue on the merits, and that issue will likely recur with each package of legislative tax increases. Resolution of the issues presented would supply valuable guidance to public officials and potential parties.

Finally, we consider whether the problem is likely to recur. *Satomi*, 167 Wn.2d at 796. For the reasons just given, this consideration also favors addressing the merits of this appeal.

The statute in controversy, and the Attorney General's interpretation of it, affects all Washingtonians. Because RCW 43.135.041(1)(a) requires an advisory vote each time the legislature raises taxes not otherwise subject to public vote, there will be more tax advisory ballot measures in the future. Thus, these same issues will likely recur: the scope of the "not subject to appeal" language in RCW 29A.72.283, and whether chapters .283 and .285 impose a deadline on challenges to consolidation. This case squarely presents these issues, and the State and the public have a continuing stake in them. Further, the resolution of these issues does not depend on the individual nature of the tax increases themselves.

Therefore, we conclude that this appeal presents matters of continuing and substantial public interest necessitating judicial resolution.

## II. TIMELINESS OF A CHALLENGE TO AN ADVISORY VOTE ON TAX LEGISLATION

Eyman argues the superior court erred when it dismissed his cause of action as untimely. We disagree.

A.        Standard of Review and Legal Principles

"An exercise of the initiative power is an exercise of the reserved power of the people to legislate." *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 204, 11 P.3d 762 (2000), *opinion corrected*, 27 P.3d 608 (2001). "In approving an initiative measure, the people exercise the same power of sovereignty as the Legislature does when enacting a statute." *Id.*

Interpretation of an initiative is a question of law that we review de novo. *Washington Citizens Action of Washington v. State*, 162 Wn.2d 142, 151, 171 P.3d 486 (2007). We apply the rules of statutory construction to initiatives. *Roe v. TeleTech Customer Care Mgmt. (Colorado) LLC*, 171 Wn.2d 736, 746, 257 P.3d 586 (2011). Thus, when interpreting the meaning of a statute enacted through the initiative process, our purpose is to ascertain the intent of the voters who, acting in their legislative capacity, enacted the measure. *Id.* Where the voters have clearly expressed their intent in the statute, we are not required to look any further. *Amalgamated*, 142 Wn.2d at 205.

Our analysis focuses on the language as the average informed voter, voting on the initiative, would read it. *Roe*, 171 Wn.2d at 746. If the language of an initiative enactment is plain and unambiguous, and in harmony with its natural and ordinary meaning, the enactment is not subject to judicial interpretation. *Id*; *Amalgamated*, 142 Wn.2d at 205. However, if there is ambiguity in the enactment, we may examine statements in the voters' pamphlet in order to ascertain the collective intent of the voters. *Amalgamated*, 142 Wn.2d at 205-06.

An initiative must be read in light of its various provisions, and in light of the surrounding statutory scheme, rather than in a piecemeal approach. *Am. Legion Post #149 v. Dep't of Health*, 164 Wn.2d 570, 585, 192 P.3d 306 (2008). We must, when possible, give effect to every word, clause, and sentence of a statute enacted through the initiative process. *Id.*

B.      Plain Meaning of the Phrase "Not Subject To Appeal" in RCW 29A.72.283

The parties take the position that the phrase "not subject to appeal" found in RCW 29A.72.283 applies only to the Attorney General's formulation of the short description and not to the decision to consolidate. We agree.

RCW 29A.72.283 provides in part:

Within five days of receipt of a measure for an advisory vote of the people from the secretary of state under RCW 29A.72.040 the attorney general shall formulate a short description not exceeding thirty-three words and *not subject to appeal*, of each tax increase and shall transmit a certified copy of such short description meeting the requirements of this section to the secretary of state. The description must be formulated and displayed on the ballot substantially as follows:

"The legislature imposed, without a vote of the people, (identification of tax and description of increase), costing (most up-to-date ten-year cost projection, expressed in dollars and rounded to the nearest million) in its first ten years, for government spending. This tax increase should be:

|  |  |
| --- | --- |
| Repealed . . . | [ ] |
| Maintained . . . | [ ]" |

(Emphasis added.)

The phrase "not subject to appeal" is placed in the middle of a clause requiring the Attorney General to prepare a short description for an advisory vote on tax legislation. This placement discloses an intent that the phrase "not subject to appeal" applies only to the Attorney General's formulation of the short description and not any other action related to advisory votes on tax legislation. Equally important, the phrase "not subject to appeal" is found only in RCW 29A.72.283, which specifically addresses the formulation of the short description; it is not found in the statutory sections addressing any other steps in the preparation of advisory votes on tax legislation. Its absence elsewhere further evinces an intent to confine the phrase to the Attorney General's formulation of a short description.

Because the plain language of RCW 29A.72.283 is clear, we agree with the parties and hold that the phrase "not subject to appeal" applies only to the Attorney General's formulation of the short description.

C.      Timeliness of Eyman's Challenge

RCW 43.135.041(1)(b) provides:

> If legislative action raising taxes enacted . . . involves more than one revenue source, each tax being increased shall be subject to a separate measure for an advisory vote of the people under the requirements of this chapter.

This requirement is implemented through a number of statutory steps.

First, RCW 43.135.041(2) requires that

> [n]o later than the first of August, the attorney general will send written notice to the secretary of state of any tax increase that is subject to an advisory vote of the people.

This is the point at which the Attorney General decides whether to consolidate measures for a single advisory vote by revenue source.

Second, RCW 43.135.041(2) provides that

> [w]ithin five days of receiving such written notice from the attorney general, the secretary of state will assign a serial number for a measure for an advisory vote of the people and transmit one copy of the measure bearing its serial number to the attorney general as required by RCW 29A.72.040.

Third, RCW 29A.72.283 provides, in part, that

> [w]ithin five days of receipt of a measure for an advisory vote of the people from the secretary of state under RCW 29A.72.040 the attorney general shall formulate a short description not exceeding thirty-three words.

Finally, RCW 29A.72.285 provides:

> When the short description is finally established under RCW 29A.72.283, the secretary of state shall file the instrument establishing it with the proposed measure and transmit a copy thereof by mail to the chief clerk of the house of representatives, the secretary of the senate, and to any other individuals who have made written

11

request for such notification. Thereafter such short description *shall be the description of the measure in all ballots* and other proceedings in relation thereto.

(Emphasis added.)

Eyman raised his challenge through a declaratory judgment action. In *Cary v. Mason County*, we discussed the timeliness of declaratory judgment actions as follows:

The Uniform Declaratory Judgments Act, chapter 7.24 RCW, includes no timeliness provisions. . . . Instead, Washington courts have said that declaratory judgment actions must be brought within a reasonable time. What constitutes a reasonable time is determined by analogy to the time allowed for appeal of a similar decision as prescribed by statute, rule of court, or other provision. In general, when there is more than one analogous appeal period, the longer of two . . . periods should be applied.

132 Wn. App. 495, 500-01, 132 P.3d 157 (2006) (emphasis, footnote, citations, and internal quotation marks omitted) (second alteration in original).

Under the last of the statutory steps set out above, "[w]hen the short description is finally established under RCW 29A.72.283, the secretary of state shall [file and mail it]. . . . Thereafter such short description shall be the description of the measure in all ballots." RCW 29A.72.285. The effect of this provision, together with RCW 29A.72.283, is that the Attorney General's short description is not subject to appeal and shall be used in ballots after the events described in RCW 29A.72.285. A challenge to the consolidation of measures necessarily affects their description and how they appear on the ballot. Thus, allowing challenges to the Attorney General's advisory vote designation after the events described in RCW 29A.72.285 would inject self-contradiction into the statutory scheme and potentially jeopardize timely preparation of the ballots. *Cary* requires us to use reasonableness as the standard for judging the timeliness of a declaratory judgment action. 132 Wn. App. at 500-01. Under that standard, a declaratory judgment action after the events described in RCW 29A.72.285 is untimely.

RCW 29A.72.285 describes two events: the final establishment of the short description under RCW 29A.72.283 and the Secretary of State's filing and mailing it. The requirement of RCW 29A.72.285 that "[t]hereafter such short description shall be the description of the measure in all ballots" could linguistically apply to either event. However, as held above, the formulation of the Attorney General's short description under RCW 29A.72.283 is not subject to appeal. The last step by the Attorney General in finalizing that description is transmitting it to the Secretary of State under RCW 29A.72.283, which occurred on August 3, 2007. That is the point beyond which the short description cannot be appealed. Thus, that is the point at which the short description is fixed, and at which RCW 29A.72.285 requires that it be used in the ballots. As shown above, any declaratory judgment action challenging consolidation must be filed by that time.[3]

On August 3, the Attorney General transmitted the short description of Advisory Vote No. 17 to the Secretary of State. On August 4, Eyman filed his petition for a declaratory judgment challenging the Attorney General's consolidation of Advisory Vote No. 17 as a single advisory vote. Thus, Eyman's challenge was untimely.

---

[3] We recognize that the statutory scheme provides a relatively narrow window in which an aggrieved party may present a legal challenge, but short statutory deadlines are common for challenges to matters that will appear on a ballot. As an example, the Attorney General points out that "[a]ny persons . . . dissatisfied with the ballot title or summary for a state initiative or referendum may, within five days from the filing of the ballot title in the office of the secretary of state, appeal to the superior court" under RCW 29A.72.080. Similarly, under RCW 29A.68.011, an elector has only two or three days to challenge the placement of a candidate's name on the ballot, depending on the circumstances. In its recent decision in *End Prison Industrial Complex v. King County*, the Supreme Court recognized the need for short deadlines to file challenges to ballot titles, holding that "'[t]here is a strong interest in the finality of ballot title decisions.'" No. 953076-4, 2018 WL 6802651 (Dec. 27, 2018) (quoting *Kreidler v. Eikenberry*, 111 Wn.2d 828, 833, 766 P.2d 438 (1989)). The decision in *End Prison* does not otherwise affect the present appeal.

We hold the superior court did not err when it dismissed Eyman's cause of action as untimely. With that, we need not further address Eyman's challenge.

CONCLUSION

We affirm the superior court's dismissal of Eyman's declaratory judgment action as untimely.

Bjorgen, J.

We concur:

Lee, A.C.J.

Melnick, J.